WAGNER CHOI & EVERS
Attorneys at Law
JAMES A. WAGNER
CHUCK C. CHOI
JAMES F. EVERS
NEIL J. VERBRUGGE
Topa Financial Center, Fort St. Twr.
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone No.      (808) 533-1877
Telefacsimile No.  (808) 566-6900
Email:  wcelaw@wcelaw.com

Attorneys for Debtor and Debtor-in-Possession
AZABU BUILDINGS COMPANY, LTD.

WATANABE ING & KOMEIJI, LLP
WAYNE K. MAU
First Hawaiian Center, Suite 2300
999 Bishop Street
Honolulu, Hawaii 96813
Telephone No.      (808) 544-8300
Telefacsimile No.  (808) 544-8399
Email:  wmau@wik.com

STUTMAN, TREISTER & GLATT PC
JEFFREY C. KRAUSE          CA 94053
ERIC D. WINSTON           CA 202407
H. ALEXANDER FISCH        CA 223211
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone No.      (310) 228-5600
Telefacsimile No.  (310) 228-5788
Email:  jkrause@stutman.com, ewinston@stutman.com
        afisch@stutman.com

Attorneys for Official Committee of Unsecured Creditors

416897v4

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) Case No. 05-50011 (RJF) |
| | ) (Chapter 11) |
| | ) |
| AZABU BUILDINGS COMPANY | ) |
| LTD., aka AZABU TATEMONO K.K. | ) |
| | ) <u>Hearing</u> |
| Debtor. | ) DATE:     June 12, 2007 |
| | ) TIME:     9:30 a.m. |
| | ) JUDGE:  Honorable Robert J. Faris |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF
ORDER CONFIRMING DEBTOR'S AND OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' SECOND AMENDED JOINT CHAPTER 11
PLAN OF REORGANIZATION FOR AZABU BUILDINGS COMPANY,
LTD., A.K.A. AZABU TATEMONO K.K. AND SUBSEQUENT FILING
<u>ENTITIES DATED AS OF APRIL 23, 2007; EXHIBIT "A"</u>**

The hearing on confirmation (the "**Confirmation Hearing**") of the "Debtor's And Official Committee Of Unsecured Creditors' Second Amended Joint Chapter 11 Plan Of Reorganization For Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K. And Subsequent Filing Entities Dated As Of April 23, 2007" (the "**Plan**")[1], commenced on June 12, 2007 at 9:30 a.m. before the Honorable Robert J. Faris, United States Bankruptcy Judge for the District of Hawaii.  Appearances were as noted in the record.  Having considered all of the pleadings filed in support of Confirmation, and the objections to Confirmation of the Plan and, based on the record in these cases, the arguments and representations

---

[1]     A copy of the Plan as confirmed by the Bankruptcy Court is annexed hereto as Exhibit "A."  Terms not otherwise defined herein shall have the same meaning ascribed to them in the Plan.

1

416897v4

of counsel present and the evidence admitted at the Confirmation Hearing as reflected in the transcript for the Confirmation Hearing, and good cause appearing, the Court now makes the following Findings of Fact and Conclusions of Law: [2]

## FINDINGS OF FACT

### Azabu and Subsequent Filing Entities

1.  Azabu Buildings Company, Ltd. ("**Azabu**") is the debtor and debtor in possession in chapter 11 case No. 05-50011 which was commenced by the filing of an involuntary petition on November 10, 2005. The order for relief in the Azabu chapter 11 case was entered on February 1, 2006, after Azabu voluntarily consented thereto.

2.  Azabu NewCo, Inc. ("**NewCo**") is a wholly-owned subsidiary of Azabu. NewCo filed a voluntary chapter 11 petition on June 11, 2007. NewCo was formed for the purpose of domesticating Azabu and converting it from a Japanese corporation into a corporation formed under the laws of the State of Delaware, because the principal assets of Azabu that will be vested in NewCo, as a wholly-owned subsidiary of Azabu, consist of the Hotel, which is located in the State of Hawaii, and stock in Azabu U.S.A., Corporation ("**AZABU USA**"), which is a Hawaii corporation with its principal assets in the State of Hawaii.

3.  AZABU USA is a wholly-owned subsidiary of Azabu. AZABU USA's principal assets consist of the King's Village shopping center, which is located in Honolulu, Hawaii, and approximately $13 million in cash, which is on deposit at the Bank of Hawaii. AZABU USA filed a voluntary chapter 11 petition on March 15, 2007.

---

[2]   Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

416897v4

4.    Azabu FF&E Subsidiary, Inc. ("**FF&E Subsidiary**") filed a voluntary chapter 11 petition on June 11, 2007.  Azabu owns 100% of the outstanding common stock of FF&E Subsidiary.  The preferred stock of FF&E Subsidiary is owned by Hyatt Corporation ("**Hyatt**").  On June 15, 2007, this Court entered an order authorizing Azabu to sell and authorizing FF&E Subsidiary to purchase certain assets and incur certain obligations (the "**FF&E Order**").  Upon the closing of such transaction,  FF&E Subsidiary's principal assets consist of the furniture and equipment used to operate the Hotel (the "**Tangible Personal Property**").  The Tangible Personal Property is located in the State of Hawaii.  Upon closing the transaction, FF&E Subsidiary's principal obligation is its debt to Azabu pursuant to the FF&E Note, which is secured by a second priority security interest in the Tangible Personal Property.  Subject to the FF&E Order, the Tangible Personal Property is also subject to the first priority Liens securing the Claims of Waikiki First Finance Co. and Waikiki S.F. LLC (together, the "**Waikiki Entities**") and a portion of the Tangible Personal Property may be subject to a Lien securing the Disputed Claim asserted by Beecher against Azabu.

5.    No trustee has been appointed for Azabu, NewCo, AZABU USA or FF&E Subsidiary (collectively, the "**Debtors**") and the Debtors have continued to serve as debtors in possession throughout the pendency of their chapter 11 cases (the "**Cases**").

### The Committee

6.    The Official Committee of Unsecured Creditors appointed in Azabu's chapter 11 case (the "**Committee**") is comprised of F4P1, Wac, Inc., The Resolution Credit Corporation, Nippon Loans, and JLQ, Inc.  No official creditors' committee has been appointed in the chapter 11 cases of NewCo, AZABU USA, or FF&E Subsidiary.

416897v4

**Approval of the Disclosure Statement, Solicitation; Confirmation Hearing**

7.      On March 22, 2007, the Bankruptcy Court entered an order (the "**Solicitation Order**") that, among other things, (a) approved the Disclosure Statement pursuant to Bankruptcy Code § 1125 and Federal Rule of Bankruptcy Procedure ("Rule") 3017, (b) established May 3, 2007 as the date for the Confirmation Hearing, (c) approved the form and method of notice of the confirmation hearing (the "**Confirmation Hearing Notice**"), (d) established procedures for soliciting and tabulating votes with respect to the Plan, and (e) established procedures governing the Confirmation Hearing. The Confirmation Hearing was thereafter continued to June 12, 2007.

8.      In accordance with the Solicitation Order, the following items were transmitted: (a) the Disclosure Statement, (b) the Confirmation Hearing Notice, (c) a Request (as defined in the Solicitation Order), and (d) with respect to those creditors in classes entitled to vote under the Plan and the Solicitation Order, a Ballot (as defined in the Solicitation Order). Such service is adequate and proper as provided by Bankruptcy Rule 3017(d), and no other or further notice is or shall be required.

9.      On April 23, 2007, Azabu and the Committee caused to be filed the Plan Supplement with respect to the Plan, which was further amended on June 8, 2007, and which may be further amended from time to time.

10.      On April 18, 2007, Azabu and the Committee filed the Declaration of Chuck Choi relating to Voting Tabulation, attesting and certifying the method and results of the ballot tabulation for the Classes of Claims entitled to vote to accept or reject the Plan (the "**Ballot Tabulation**"). Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a

416897v4

manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order.

11.     The Chuo Mitsui Trust & Banking Co., Ltd. ("**CMTB**"), the Waikiki Entities, Beecher Limited ("**Beecher**"), Kabushiki Kaisya Pacifica aka Pacifica Co., Ltd. ("**Pacifica**"), the United States Trustee and the State of Hawaii filed objections and related declarations and supporting documents in opposition to confirmation of the Plan (the "**Confirmation Objections**").

12.     Azabu and the Committee filed memoranda and declarations in support of Confirmation and in response to the Confirmation Objections and supporting documents (collectively, the "**Confirmation Evidence**"), as reflected in this Court's docket.

13.     The Confirmation Objections of CMTB and the Waikiki Entities were withdrawn pursuant to the CMTB Settlement Agreement (as defined below), and the WE Interim Settlement Agreement and WE Final Settlement Agreement (each as defined below), respectively.  Beecher withdrew its Confirmation Objection, except with respect to the Plan's injunctive provisions regarding the Japanese Case, pursuant to the Beecher Settlement Agreement (as defined below).  Pacifica's Confirmation Objection, and the remaining Confirmation Objection of Beecher, are overruled on the merits as stated in the record pursuant to the Confirmation Order.  The Confirmation Objections of the United States Trustee were resolved consensually as reflected in the record and the Confirmation Order.  The United States Trustee's Confirmation Objection with respect to the exculpatory provision of the Plan was overruled on the merits except to the extent that such exculpatory provision is modified by the Confirmation Order.  The State of Hawaii's Confirmation Objection was resolved consensually as stated on the record of the Confirmation Hearing and memorialized in the Confirmation Order.

14. Azabu (and its subsidiaries, including Azabu USA) and the Committee entered into the "Settlement Agreement (Waikiki Entities)" (the "**WE Interim Settlement Agreement**") to resolve the Waikiki Entities' objections to confirmation of the Plan. The WE Interim Settlement Agreement modified the treatment of Class 5 and Class 6 under the Plan by, among other things, allowing the Waikiki Entities' Liens (with their existing priorities) to remain attached to the Waikiki Entities' existing collateral. The WE Interim Settlement Agreement has been approved by the Court and the provisions of the WE Interim Settlement Agreement will supersede and replace the provisions of the Plan that deal directly with the treatment of Class 5 and Class 6, except as further modified by the "Adversary Proceeding Settlement Agreement" (the "**WE Final Settlement Agreement**").

15. Azabu (and its subsidiaries, including Azabu USA) and the Committee entered into the WE Final Settlement Agreement to resolve the remaining disputes among the Waikiki Entities, the Debtors and the Committee. The WE Final Settlement Agreement further modifies the treatment of Class 5 and Class 6 under the Plan by, among other things, Allowing as of the Effective Date (as defined in the WE Final Settlement Agreement) of such settlement the Waikiki Entities' secured claims in the amount of $330 million, as described in the WE Final Settlement Agreement. The term sheet setting forth the WE Final Settlement Agreement was approved by the Court at the hearing on June 14, 2007 and the WE Final Settlement Agreement shall be attached to the form of order approving the WE Final Settlement Agreement. The provisions of the WE Final Settlement Agreement will supersede and replace the provisions of the Plan and will supplement, except as the WE Final Settlement Agreement expressly modifies, the WE Interim Settlement Agreement that deal directly with the treatment of Class 5 and Class 6.

416897v4

U.S. Bankruptcy Court - Hawaii  #05-50011  Dkt # 1348  Filed  06/28/07  Page 7 of 31

16.     Azabu and the Committee entered into the "Beecher Plan Settlement Agreement" with Beecher, Wac, Inc. and Preh, Inc. (the "**Beecher Settlement Agreement**") to resolve Beecher's objections to confirmation of the Plan.  The Beecher Settlement Agreement modifies the treatment of Class 4 and Class 8A under the Plan.  The Beecher Settlement Agreement has been approved by the Court and the provisions of the Beecher Settlement Agreement will supersede and replace the provisions of the Plan that deal directly with the treatment of Class 4 and Class 8A.

17.     Azabu (and its subsidiaries, including Azabu USA) and the Committee entered into the "Global Settlement Agreement between CMTB, the Debtors and Committee" (the "**CMTB Settlement Agreement**") to resolve, among other things, CMTB's objections to confirmation of the Plan.  The CMTB Settlement Agreement modifies the treatment of Classes 2A and 2B under the Plan. The term sheet setting forth the CMTB Settlement Agreement was approved by the Court at the hearing on June 14, 2007, and the CMTB Settlement Agreement shall be attached to the form of order approving the CMTB Settlement Agreement.  The provisions of the CMTB Settlement Agreement will supersede and replace the provisions of the Plan that deal directly with the treatment of Classes 2A and 2B.

18.     The Plan Proponents proposed to modify the treatment of Classes 7 and 8B to be parallel to the revised Plan treatment of Classes 2A, 2B, 4, 5, 6, and 8A under the WE Interim Settlement Agreement, the Beecher Settlement Agreement and the CMTB Settlement Agreement.

19.     This Bankruptcy Court takes judicial notice of the docket of the Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Cases.

7

20.     Azabu, the Subsequent Filing Entities, and the Committee as the joint proponents of the Plan, have the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of evidence, and they have done so as set forth herein.

### The Auction Process

21.     On June 21, 2006, Hyatt, Azabu and the Committee entered into a letter of intent (the "**LOI**") which formed the basis of the proposed transactions that are to be implemented through the Plan.

22.     On September 29, 2006, Azabu and the Committee filed their Joint Motion Requesting Entry of an Order on an Expedited Basis: (1) Approving Certain Bidding Procedures Relating to Sponsoring a Plan of Reorganization, Including Form of Non-Disclosure Agreement; (2) Authorizing Hyatt Corporation as Stalking Horse Bidder and Approving Payment of Break-Up Fee; and (3) Scheduling Auction and Hearing on Proposed Disclosure Statement ("**Joint Motion**") seeking approval of a term sheet ("**Hyatt Term Sheet**") among Azabu, the Committee and Hyatt which, among other things, provided for Hyatt to be the stalking horse bidder to acquire for $445 million, subject to overbid, the stock of the reorganized Azabu, which would be revested with, inter alia, Azabu's leasehold interest in the Hotel and its interest in AZABU USA, but would first transfer for the benefit of creditors the Excluded Assets.

23.     After an evidentiary hearing, this Court granted the Joint Motion, as modified.  On December 7, 2006, the Court entered the Initial Bid Procedures Order, which sets forth a comprehensive procedure for the disposition of the equity in the successor to Azabu through a plan of reorganization to be sponsored by the highest bidder.  On March 9, 2007, the Bankruptcy Court entered the Order Granting Joint Motion of Azabu and Official Committee of Unsecured Creditors Requesting Approval of Amended Deadlines and New Hearing Dates,

8

modifying the date of the auction sale and related dates (the Court's March 9, 2007 Order together with the Initial Bid Procedures Order, the "**Bid Procedures Orders**").

24. On February 7, 2007, Azabu, the Committee and Hyatt finalized the proposed "Acquisition Agreement" (the "**Acquisition Agreement**"). Hyatt has assigned its rights under the Acquisition Agreement to a joint venture entity known as "W2007 Waikiki Holdings, L.L.C." (the "**Buyer**"). The members of the Buyer are Hyatt and Whitehall Street Global Real Estate Limited Partnership 2007 ("**Whitehall**"). Subject to the terms of the Acquisition Agreement, the net cash held by Azabu and AZABU USA is an Excluded Asset to be transferred for the benefit of creditors and not revested in reorganized Azabu or the reorganized Subsequent Filing Entities.

25. Azabu and the Committee jointly filed the Plan on March 13, 2007. It amended the original plan, which was filed on February 9, 2007, and the subsequent amended plans were filed on February 21, 2007, March 5, 2007, March 13, 2007, March 20, 2007 and April 23, 2007. The Plan was further amended by the WE Interim Settlement Agreement, the WE Final Settlement Agreement, the Beecher Settlement Agreement, and the CMTB Settlement Agreement. The amendments effectuated by the settlement agreements did not materially and adversely affect the treatment of Class 9 and, therefore, do not require re-solicitation of that Class.

26. The Committee's financial advisor, Houlihan Lokey Howard & Zukin ("**HLHZ**") undertook an extensive marketing process, free from any bias, that was calculated to generate competing bids. HLHZ prepared a confidential information memorandum, created a data room with almost 1400 documents, which data room was periodically updated, prepared and circulated to over 100 persons a "teaser memorandum" for potential bidders, contacted over

9

120 potential bidders to determine their potential interest, 51 of whom requested a confidentiality agreement, 35 of whom signed a confidentiality agreement and 19 of whom accessed the data room, and made itself available to potential bidders.

27.     Despite the efforts of HLHZ, no Qualified Bidder submitted a Qualified Bid prior to the Bid Deadline on March 6, 2007.  As a result, there was no auction sale.

28.     Pursuant to the provisions of the Bid Procedures Order, Azabu and the Committee negotiated the Acquisition Agreement with Hyatt, filed the Acquisition Agreement with this Court and thoroughly marketed the equity in Azabu.  Hyatt was the only Qualified Bidder that submitted a Qualified Bid.  On March 14, 2007, Azabu and the Committee asked the Bankruptcy Court to confirm that Hyatt's bid was the highest and best offer received.  On March 14, 2007, this Court entered its "Order Confirming Sale to Hyatt Corporation Because No Other Qualified Bids Were Received Prior to the Bid Deadline."

29.     Azabu and the Committee have thoroughly and completely marketed the equity in the Debtor in compliance with the Bid Procedures Order.  They are not aware of any potential purchaser that has been excluded from the marketing process.  They had every incentive to maximize the proceeds received by the Estate.  It is not likely that further additional marketing of the equity in reorganized Azabu would result in any increased purchase price.

30.     Neither Buyer nor any of its members is an "insider" of the Debtors, as that term is defined in Bankruptcy Code § 101.  Except as otherwise set forth herein:

(a)     Buyer has no prepetition or postpetition relationship with any other bidder, the Debtors, major creditors or equity security holders in the case, or any of the Debtors' shareholders, officers, directors, agents, or employees, except that (i) Hyatt has managed the Hotel since 1976 pursuant

10

to a written management agreement and is a holder of preferred stock in FF&E Subsidiary, and (ii) Whitehall is an affiliate of Goldman Sachs which, in turn, is affiliated with JLQ, LLC, a member of the Committee;

(b)     Neither Buyer nor any of its insiders contemplates any relationship following the close of the acquisition with the Debtors' present or former officers, directors, agents, or employees (including, but not limited to, whether any offers of employment or compensation have been made or will be offered to Debtors' present or former officers, directors, agents, or employees);

(c)     No consideration is contemplated to be transferred or has been transferred by Buyer or any of its insiders in connection with the sale to any person other than the Debtors; and

(d)     There has been no fraud or collusion between the Buyer or any of its insiders and any other bidders or the Debtors' shareholders, creditors, officers, directors, agents or employees, or any attempt to take unfair advantage of other bidders.

31.     The proposed transaction with the Buyer was the culmination of an extensive marketing effort jointly conducted by Azabu and the Committee. The Committee's investment banker, HLHZ, worked closely with Azabu and the Committee in an effort to conduct a sale process that maximized the net return available to the Estates. That effort has been inclusive. No potential bidder that was a Qualified Bidder as defined by the Bid Procedures Order was excluded from the process or discouraged from bidding in any way.

32.     Azabu and the Committee, and Buyer, negotiated the Acquisition Agreement at arm's-length and in good faith, without collusion. Buyer is a good-faith purchaser. Buyer has acted in good faith within the meaning of Bankruptcy Code § 363(m) at all times in connection with these Chapter 11 Cases,

including in negotiating the transactions contemplated by the Plan, Acquisition Agreement and related documents. As of June 14, 2007, there was no evidence that the Buyer, Buyer Releasees, the Debtor or the Subsequent Filing Entities were in breach of or have failed to perform any act or undertaking required by any of them under the Acquisition Agreement, Plan or related documents.

33.     The purchase price is fair and reasonable and constitutes fair and adequate consideration for the equity in NewCo. The Equity Sale will not hinder, delay or defraud any entity to which the Debtors were or to which the Debtors may become indebted. The Debtors will not receive less than a reasonably equivalent value pursuant to the transactions contemplated by the Plan and the Equity Sale.

## Bankruptcy Code Requirements For Confirmation and Classification

34.     In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates 14 Classes of Claims (including Class 8A) and 5 Classes of Interests. Each Class 7 Claim shall be deemed to be separately classified in a subclass of Class 7 and shall have all rights associated with separate classification under the Bankruptcy Code. Each Class 8 Claim shall be deemed to be separately classified in a subclass of Class 8 and shall have all rights associated with separate classification under the Bankruptcy Code. The Claims and Interests placed in each Class (or subclass, as applicable) are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan.

35.     The Plan specifies that Classes 2A, 3, 4, 5, 6, 7, 8A, 8B, 12, 13, 14, 15, 17 and 18 are not impaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code. This Court need not determine, and is not determining, whether Classes 2A, 4, 5, 6 or 8A are in fact unimpaired because

the sole member of each such Class has voted to accept the Plan as modified by the Confirmation Order. Classes 3, 7, 8B, 12, 13, 14, 15, 17 and 18 are deemed to have accepted the Plan because they are not impaired under the Plan.

36.     The Plan designates that Classes 1, 2B, 9, 10, 11 and 16 are impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

37.     Classes 10, 11 and 16 are deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(e), because they are not receiving or retaining any property under the Plan. The existing equity holders of Azabu (Class 11) will receive an equity interest in NewCo on a temporary basis as a step in the Domestication Transaction, which converts Azabu from a Japanese corporation into a Delaware corporation, but that stock interest is terminated under the Plan, and 100% of the stock in NewCo will be issued to Buyer in exchange for cash consideration.

38.     Votes to accept and reject the Plan have been solicited from creditors holding Claims in Classes 1, 2A, 2B, 4, 5, 6, 8A and 9. Such votes were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practices.

39.     As set forth in the Ballot Tabulation, Class 9 voted to accept the Plan. Initially, Classes 2A, 2B, 4, 5, 6 and 8A each voted to reject the Plan, and the issue of whether they had the right to vote or their claims were not impaired under Bankruptcy Code § 1124 was reserved for determination at the Confirmation Hearing. Except with respect to Class 2B, the ballots cast were provisional. Pursuant to the WE Interim Settlement Agreement, the Beecher Settlement Agreement and the CMTB Settlement Agreement, the sole member of each of the following Classes withdrew its vote to reject the Plan and is deemed to have voted

13

to accept the Plan: Class 2A, Class 2B, Class 4, Class 5, Class 6, and Class 8A.  In addition, Beecher, Wac, Inc. and Preh, Inc. withdrew their Class 9 votes to reject the Plan and are deemed to have voted these Class 9 Claims to accept the Plan.

### Treatment

#### Secured Claims

40.    The holders of Allowed Secured Claims (Classes 2A, 2B, 3, 4, 5, 6, 7, 8A, 8B, 12 and 15) will receive at least as much as they would receive in a case under chapter 7 with respect to those Secured Claims.  Secured creditors will receive payment in full of their Allowed Secured Claims once pending objections to Disputed Secured Claims are finally resolved.  The AZABU Liquidating Trust will have sufficient cash to pay in full any of the Secured Claims that are Allowed.

41.    Notwithstanding the contrary provisions contained in the Plan, the Confirmation Order provides for the amendment of the Plan to allow the holders of pre-existing Secured Claims in each of the following classes to continue to retain their existing liens, subject to all objections, defenses, counterclaims, setoffs, and arguments regarding equitable subordination (collectively, the "Objections") except in the event that such Objections are released pursuant to the terms of the CMTB Settlement Agreement and the WE Final Settlement Agreement, provided, however, subject in all respects to the Objections reserved in the Beecher Settlement Agreement: Class 2A, Class 2B, Class 3, Class 4, Class 5, Class 6, Class 7, and Class 8A and Class 8B.  Each holder of such a Secured Claim shall retain its existing liens, pending the "Closing" as defined in the Acquisition Agreement.  Any Secured Claims that are Allowed and found to not be subject to equitable subordination by a Final Order prior to Closing will be paid at Closing from the Cash Proceeds paid by the Buyer for the NewCo equity.  However, specifically pursuant to the WE Final Settlement Agreement, the Secured Claims of the Waikiki Entities, Class 5 and Class 6 under the Plan (subject, as applicable,

14

in certain instances, to the occurrence of the Effective Date of the WE Final Settlement Agreement, as defined therein): (i) shall retain their existing liens in all their existing collateral, (ii) shall be deemed Allowed in the aggregate sum of $330,000,000, (iii) are specifically not subject to equitable subordination or any of the Objections, and (iv) shall be paid in full in Cash at Closing, all as described in the WE Final Settlement Agreement. (For purposes of clarity, the Waikiki Entities' retention of their existing Liens in existing collateral and the timing of the payment of their Allowed Secured Claims is set forth in the WE Interim Settlement Agreement, which has been incorporated by reference, as modified, into the WE Final Settlement Agreement.) Any pre-existing Lien securing any Disputed Secured Claim will be by operation of law permanently transferred from the existing collateral to the Cash received by the AZABU Liquidating Trust in satisfaction of the Plan Note, subject to the Objections, with the same validity and relative priority as it has on the existing collateral.

42.     The preservation of their Liens pending the Closing and the transfer of the Liens from the existing collateral to a fund of Cash that exceeds the aggregate sum allegedly owed to all of the holders of Disputed Secured Claims constitutes adequate protection pursuant to Bankruptcy Code § 361 and indubitable equivalence pursuant to Bankruptcy Code § 1129(b)(2)(A)(iii); provided, however, that pursuant to the Beecher Settlement Agreement, the parties have reserved their rights to argue over the portion of the Cash proceeds that must be reserved and any other protections, if any, that must be provided to provide Beecher with indubitable equivalence as of the Operative Date (as defined in the Beecher Settlement Agreement).

### Unsecured Claims

43.     The holders of Allowed General Unsecured Claims against Azabu that are not subordinated (Class 9) will receive substantially more than they

416897v4

would receive in a case under chapter 7, because if the assets of Azabu or NewCo were sold outright, Azabu's Estate would incur a substantial income tax liability for both federal and Hawaii state income taxes. That liability could exceed $78 million. While a buyer might pay more for Azabu's assets because it would receive a higher basis in the assets if it engaged in an asset purchase, rather than a stock acquisition, the additional consideration that might be paid by a buyer would likely be less than the large tax liability that would arise in a chapter 7 asset sale transaction. As a result, holders of Allowed Class 9 Claims will receive more under the Plan than they would receive if Azabu's case were converted to a case under chapter 7.

44. Subordinated Claims in Class 10 will not receive any consideration under the Plan. They would, however, also not receive any consideration if Azabu's case were converted to a case under chapter 7. Azabu's total Allowed Unsecured Claims that are not subordinated drastically exceed the value of Azabu's assets or the proceeds that can be generated from a sale of either assets or equity securities in Azabu (or in NewCo, as the domesticated successor to Azabu) and, therefore, there is no residual value left for subordinated unsecured creditors or equity interest holders. They will receive under the Plan the same thing they would receive if Azabu's case were converted to a case under chapter 7: i.e., nothing.

45. Creditors in Classes 12, 15 and 17 shall be paid in full and are not impaired. Bankruptcy Code § 1129(a)(7) does not, therefore, apply to these Classes. They are also deemed to have accepted the Plan.

**Equity Interests**

46. Allowed Equity Interests in Classes 11 and 16 will not receive any consideration under the Plan. They would, however, also not receive any consideration if these cases were converted to a case under chapter 7

47.     The holders of Allowed Equity Interests in Class 14 and Class 18 are not impaired.  The holders of such interests are, therefore, deemed to have accepted the Plan.  Those Equity Interests shall continue to exist and shall continue to be owned by Azabu and then by NewCo.

48.     The Plan provides for the same treatment for each Claim or Interest in each respective Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

**Means of Implementation**

49.     The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including the prosecution of the Japanese Case, the consummation of the Domestication Transaction, and the closing of the Equity Sale, all as contemplated by the Plan.

50.     NewCo's Restated Certificate of Incorporation, which has been filed with the Court, provides that NewCo will not be authorized to issue any non-voting capital stock.

51.     The Committee supports confirmation of the Plan.

52.     The Purchase Price to be provided by the Buyer to Azabu pursuant to the terms of the Acquisition Agreement greatly exceeds the aggregate cure amounts ("**Cure Amounts**") due under the Assumed Executory Contracts, which are set forth in Exhibit 7.1 to the Plan.  The Liquidating Trust can, therefore, cure any defaults under the Assumed Executory Contracts.

53.     The Debtors have demonstrated adequate assurance of future performance with respect to the Assumed Agreements.  NewCo and AZABU USA, as reorganized, will perform thereunder.  No party to an executory contract has objected to the Plan or the assumption or assignment of any executory contract.

17

54.     As a condition to the purchase of the equity in NewCo by the Buyer, the Buyer requires that the assets acquired by NewCo to be free and clear of all Liens and Claims as set forth in the Confirmation Order (except for Permitted Encumbrances as defined and specified in the Acquisition Agreement), and that the Buyer and NewCo have no liability for any liabilities of the Debtors.

55.     The cash proceeds to be received from Buyer by NewCo and paid directly to the AZABU Liquidating Trust on account of the Plan Note exceed the sum of filed Secured Claims against the Debtors, and equal or exceed the value of the Debtor's assets that was determined by HLHZ's comprehensive marketing effort.

56.     Azabu exercised sound and considered business judgment in deciding to enter into the Acquisition Agreement and to sell the equity in NewCo to the Buyer in accordance with the Acquisition Agreement.  Azabu has demonstrated sound business purpose and justification for the Plan, pursuant to Bankruptcy Code § 363(b).

57.     All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court, have been paid or will be paid pursuant to the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.


## CONCLUSIONS OF LAW

### Jurisdiction and Venue

58.     This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

59.     This Bankruptcy Court has jurisdiction over the Case pursuant to sections 157 and 1334 of title 28 of the United States Code.  Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.

416897v4

Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine
whether the Plan complies with the applicable provisions of the Bankruptcy Code
and should be confirmed and exclusive jurisdiction over all of the Debtors' assets.

### Confirmation Requirements

### Section 1129(a)(1)

60.     The Plan complies with the applicable provisions of the
Bankruptcy Code, thereby satisfying section 1129(a)(l) of the Bankruptcy Code.

(a)     The Plan properly places substantially similar claims in
each class and designates such classes of claims, thereby satisfying
sections 1122 and 1123(a)(1) of the Bankruptcy Code;

(b)     The Plan specifies the treatment of each Class that is
impaired, thereby satisfying section 1123(a)(2);

(c)     The Plan specifies the treatment of each Class that is
impaired, thereby satisfying section 1123(a)(3);

(d)     The Plan provides for the same treatment for each claim
or interest in a particular Class, unless the holder thereof agrees to a less
favorable treatment, thereby satisfying section 1123(a)(4);

(e)     The Plan, the Plan Supplement, the Acquisition
Agreement, the AZABU Liquidating Trust Agreement, the WE Interim
Settlement Agreement, the WE Final Settlement Agreement, the Beecher
Settlement Agreement, the CMTB Settlement Agreement and the other
documents to be entered into as contemplated by the Plan,  provide for
adequate and proper means for implementing the Plan, including, (i) the
adoption of the Articles of Incorporation and By-Laws, (ii) the creation of
the AZABU Liquidating Trust and the issuance of the AZABU Liquidating
Trust Interests, (iii) the creation of the Plan Note and the issuance of the Plan

19

Note Collateral in favor of the AZABU Liquidating Trust; (iv) the prosecution of the Japanese Case; (v) the completion of the Domestication Transaction and the closing of the Equity Sale; (vi) the adoption and implementation of all corporate actions necessary to implement the Plan; and (vii) the execution of all documents and the implementation of all actions as required with respect to, and in accordance with the Plan provisions with respect to, the transactions contemplated by the Plan, thereby satisfying section 1123(a)(5);

      (f)    The Articles of Incorporation and By-Laws for NewCo include a provision prohibiting the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6);

      (g)    The Plan Proponents have disclosed the identity of directors and officers of NewCo and the Liquidating Trustee that are, under the circumstances presented, consistent with the interests of creditors, equity holders, and public policy in accordance with section 1123(a)(7);

      (h)    Although the Plan Proponents cannot identify the trustee who will be appointed in the Japanese Case before the Japanese Case is filed, because the Japanese Trustee will be appointed by the Japanese court, that process assures that his or her selection will be consistent with the interests of creditors and equity holders.

      (i)    The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code; and

      (j)    The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

**Section 1129(a)(2)**

416897v4

U.S. Bankruptcy Court - Hawaii   #05-50011   Dkt # 1348   Filed  06/28/07   Page 21 of 31

61.     The Debtors and the Committee have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

(a)     The Debtors are proper debtors under section 109 of the Bankruptcy Code;

(b)     The Debtors and the Committee have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

(c)     The Debtors and the Committee have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

## Section 1129(a)(3)

62.     The Debtors and the Committee have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The good faith of the Debtors and the Committee is evident from the facts and records of these cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors and sale of the equity in reorganized NewCo, which owns AZABU USA and FF&E Subsidiary.

63.     Pacifica argues that the Plan is not fair as it prevents Pacifica from litigating in Japan.  To allow Pacifica to litigate its Disputed Claims in Japan would not solve a problem; it would create a problem of disparate treatment of general unsecured creditors.  No creditor in this case has a right to have its filed

416897v4

claim resolved in another court. United States bankruptcy law and procedure provide sufficient procedural protections to creditors who have filed claims and such protections are similar to those provided by Japanese law. A Japanese court would likely find such procedures to be adequate.

64. The injunctive provisions of the Plan and the Confirmation Order implement the Debtors' discharge. These provisions are not directed at the court in Japan. This Court has jurisdiction over all persons appearing in these chapter 11 cases, and that jurisdiction is worldwide. It is unlikely that the Japanese court would consider this Court's injunction to be an affront to public order and good public morals in Japan. Moreover, the Plan provides a mechanism for parties in these cases to seek relief from the injunctions.

### Section 1129(a)(4)

65. Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Debtors' chapter 11 cases, or in connection with the Plan and incident to the Debtors' chapter 11 cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4).

### Section 1129(a)(5)

66. The Debtors and the Committee have complied with section 1129(a)(5) of the Bankruptcy Code. The identities of the individuals to serve on the Board of Directors of the Debtors, as officers of the Debtors and as the AZABU Liquidating Trustee as of the Effective Date were fully disclosed. The appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. The identity of any insider that will be employed or retained by the Debtors after the Effective Date and the nature of such insider's compensation have also been fully disclosed.

### Section 1129(a)(6)

67.     The Plan does not provide for any changes in rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

### Section 1129(a)(7)

68.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses provided in the Disclosure Statement (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of a Claim or Interest in an impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if each Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

### Section 1129(a)(8)

69.     Classes 3, 7, 8B, 12 through 15, 17 and 18 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Classes 2A, 2B, 4, 5, 6, 8A and 9 have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code. Although Classes 2A, 2B, 4, 5, 6 and 8A originally voted to reject the Plan, pursuant to the WE Interim Settlement Agreement, the Waikiki Final Settlement Agreement, the Beecher Settlement Agreement and the CMTB Settlement Agreement, they agreed to withdraw their rejections and voted to accept the Plan. Pursuant to Bankruptcy Rule 3018, it is appropriate to allow the Waikiki Entities, Beecher and CMTB to change their votes to accept the Plan. Classes 10, 11 and 16 (the "**Deemed Rejecting Classes**") are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to the

416897v4

Deemed Rejecting Classes, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes. <u>See</u> Conclusions 75 through 76, below.

### Section 1129(a)(9)

70.     The treatment of Administrative Claims and Priority Tax Claims under the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

### Section 1129(a)(10)

71.     At least one Class of Claims against Azabu that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. Classes 2B and 9 satisfy this requirement. If they are impaired, as the Waikiki Entities, Beecher and CMTB contend, Class 2A, Class 4, Class 5, Class 6 and Class 8A also satisfy this requirement.

72.     There is no impaired Class of Claims against AZABU USA, NewCo, or FF&E Subsidiary, thus section 1129(a)(10) is satisfied as to these Debtors.

### Section 1129(a)(11)

73.     The evidence proffered, adduced, or presented prior to and at the Confirmation Hearing (a) is persuasive and credible, and (b) establishes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code, except as otherwise contemplated by the Plan with respect to the dissolution and liquidation of the Debtor.

74.     Beecher and the Waikiki Entities originally objected that confirmation of the Plan might not be feasible because of the conditions to the Effective Date. Pursuant to the WE Interim Settlement Agreement and the

Beecher Settlement Agreement, they have withdrawn these objections to confirmation. CMTB objected to confirmation on the grounds that the Plan might not be feasible because Azabu might not obtain the private letter ruling from the IRS that is a condition precedent to the Buyer's obligation to proceed under the Acquisition Agreement. Based on the testimony of Jeffrey Maydew, this Court finds that there is a reasonable prospect that Azabu could obtain the private letter ruling. Azabu should be given an opportunity to obtain that private letter ruling. If it is unable to obtain the private letter ruling and, thus, the Effective Date of the Plan does not occur, no party will be prejudiced by the Confirmation of the Plan, because the modifications to the Plan set forth in the Confirmation Order permit each secured creditor to retain its Lien on its existing collateral pending the Effective Date and the Closing of the sale to the Buyer.

75.     In order to satisfy Bankruptcy Code § 1129(a)(11), the Plan Proponents need not prove that there is an absolute certainty that the conditions to confirmation will be met. On the contrary, the Plan Proponents need only show that the Plan offers a reasonable assurance of success. This is a novel plan. The Plan has the requisite level of likelihood of success. The Japanese Plan has no precedent, but in light of the Japanese law presented, there is a reasonable likelihood that the Japanese court would confirm the Japanese Plan. The Plan Proponents have met the standard set forth in Section 1129(a)(11).

### Section 1129(a)(12)

76.     All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court, have been paid or will be paid pursuant to the Plan, the terms of which are satisfactory to the Debtors and the United States Trustee, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

**Section 1129(a)(13)**

77.     Bankruptcy Code § 1129(a)(13), which requires a plan to provide for the continuation of payment of all "retiree benefits" (as defined in Bankruptcy Code § 1114(a)), is inapplicable in the instant case as the Debtors do not have any such obligations.

**Section 1129(b)**

78.     Based upon the evidence proffered, adduced, or presented by the Debtors and prior to and at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to each Rejecting Class, as required by section 1129(b)(1) of the Bankruptcy Code. Pursuant to Bankruptcy Code section 1129(b)(2)(B)(ii), no holders of Claims or Interests that are junior to those of Holders of Allowed Class 10 Claims, or Interests junior to the Class 11 or Class 16 Interests, will receive or retain any distribution on account of junior interests under the Plan. In addition, the Plan does not provide for payment of more than the full amount of their respective Allowed Claims to any senior Class.

79.     Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of each Rejecting Class.

**Other Matters**

80.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933. No governmental agency with standing to raise an objection pursuant to Bankruptcy Code § 1129(d) has, in fact, raised any such objection. This is strong evidence that the principal purpose of the Plan is not tax avoidance.

81.     It is not the intent of the Plan Proponents to avoid the payment of taxes in the event that the Buyer does not close and the Liquidating Trust is required to enforce its rights under the Plan Note and foreclose on the Plan Note Collateral. Thus for the avoidance of doubt, paragraph 20 of the Confirmation

Order expressly provides that in the event of a sale of NewCo's assets to satisfy NewCo's obligations under the Plan Note, any income tax claims arising from that sale will constitute priority tax claims that will be paid by the Liquidating Trust. The Plan Proponents believe that it is very unlikely that such a sale will ever occur. It is far more likely that the Buyer will close the purchase of the equity of NewCo or, if the Buyer does not close, an alternative Buyer will be found to proceed with the same type of equity sale transaction to eliminate the unnecessary incurrence of additional taxes through an asset sale.

82. All modifications to the Plan filed or announced prior to the conclusion of the Confirmation Hearing constitute technical changes and/or changes that have either been consented to by affected constituents or which do not adversely affect or change the treatment of any other Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Bankruptcy Code §§ 1125 or 1127(a), or re-solicitation of votes under Bankruptcy Code § 1126, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

83. Based on the record before the Bankruptcy Court in the Cases, the Debtors, the Committee, the Liquidating Trustee, Hyatt and the Buyer, and the Shareholders (with respect to their receipt of Equity Interests in NewCo) and their respective employees, officers, members, directors, agents, shareholders, and representatives, and any professional persons employed or formerly employed by any of them, have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the

27

protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan.

84.     Article VII of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of sections 365 and 1123(b)(2) of the Bankruptcy Code, including the requirement that adequate assurance of future performance under the Assumed Executory Contracts will be provided.

85.     The release, exculpation and injunction provisions contained in the Plan (subject to the limitations set forth in the Confirmation Order) are fair and equitable, are given for valuable consideration, were properly noticed to holders of Claims and Interests and other interested parties in accordance with the requirements of due process and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and are in the best interests of the Debtors and their chapter 11 Estates.

86.     Each term and provision of the Plan is valid and enforceable pursuant to its terms.

87.     The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

88.     This Court is unaware of any conduct by the Debtors, the Committee or the Buyer or their respective employees, officers, members, directors, agents, shareholders, representatives or professional persons employed by them that would cause or permit the Acquisition Agreement or the transactions contemplated thereunder to be avoided or challenged pursuant to Bankruptcy Code § 363(n) or otherwise. Although extensive objections to confirmation have been filed (many of which have been withdrawn), no creditor or party in interest has presented any evidence of any conduct of the type described in Bankruptcy Code

416897v4

§ 363(n) or argued that the sale of the stock of NewCo should be subject to challenge thereunder.

89.     The highest and best price for the NewCo equity is represented by the Purchase Price under the Acquisition Agreement and it is, therefore, in the best interest of the Debtors, their creditors, and the Estates that the Court enter the Confirmation Order.

90.     The Debtors have satisfied the requirements of Bankruptcy Code § 365(b)(1) in connection with the assumption of the Assumed Executory Contracts.  Each of the Assumed Executory Contracts is an executory contract or an unexpired lease of the Debtors under Bankruptcy Code § 365.  All conditions under Bankruptcy Code § 365 for the assumption by the Debtor of each Assumed Executory Contract to which it is a party have been satisfied.

91.     The Buyer is a good-faith purchaser entitled to the protections of Bankruptcy Code § 363(m) with respect to the transactions contemplated by the Acquisition Agreement, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Plan will not affect the validity of the issuance of the NewCo Equity to the Buyer or any other aspect of the Plan or the Domestication Transaction, unless the Confirmation Order is duly stayed pending such appeal prior to the Closing.

92.     Azabu has full corporate power and authority to:  (a) execute and deliver the Acquisition Agreement and all other documents contemplated thereby, including, without limitation, all documents necessary to assume or assume and assign the Assumed Executory Contracts; and (b) consummate the transactions contemplated by the Acquisition Agreement and all other documents contemplated therein.

93.     The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 10.1 of the Plan and Bankruptcy Code § 1142.  It is

appropriate for this Court to retain jurisdiction to: (a) enforce and implement the terms and provisions of the Acquisition Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (b) compel completion of the Domestication Transaction and all other transactions and transfers contemplated by the Plan, (c) enforce the Assumed Executory Contracts, (d) resolve any disputes arising under or related to the Acquisition Agreement or the Plan, and (e) interpret, implement and enforce the provisions of the Plan.

94.     Based on the foregoing findings and conclusions it is appropriate for the Court to enter the Confirmation Order.

95.     These Findings of Fact and Conclusions of Law shall be deemed entered on the dockets for, and shall be applicable to, the chapter 11 cases for the Subsequent Filing Entities (Case Nos. 07-00249, 07-00600, and 07-00601).


DATED:_____, 2007     _____
                                                      THE HONORABLE ROBERT J. FARIS
                                                      UNITED STATES BANKRUPTCY JUDGE

416897v4

U.S. Bankruptcy Court - Hawaii   #05-50011   Dkt # 1348   Filed  06/28/07   Page 31 of 31