WAGNER CHOI & EVERS

JAMES A. WAGNER
CHUCK C. CHOI
JAMES F. EVERS
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: wcelaw@wcelaw.com

Attorneys for Debtor and
Debtor-in-Possession
AZABU BUILDINGS COMPANY, LTD.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AZABU BUILDINGS COMPANY LTD., aka AZABU TATEMONO K.K.,<br><br>      Debtor and Debtor-in-possession | Case No. 05-50011<br>(Chapter 11)<br><br>DATE: [to be set]<br>TIME:<br>JUDGE: Hon. Robert J. Faris |

**DEBTOR'S MOTION FOR ORDER
APPROVING SETTLEMENT OF
SINKING FUND OBLIGATIONS; EXHIBIT "A"**

AZABU BUILDINGS COMPANY, LTD., debtor and debtor in

possession herein (the "Debtor"), by and through its undersigned counsel, and

pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019, seeks entry of an order authorizing the Debtor to enter into a settlement of the Debtor's obligation to deposit funds, beginning January 1, 2007, sufficient to cover the probable cost to demolish and remove the Hotel improvements, including the adjacent convention center/garage structure at the expiration of its ground leases with 2424 Kalakaua Associates (the "Steiners") and C.K. (Nevada) Corp. ("CK"; together with the Steiners, the "Landlords") and related subleases and sub-sublease, on the terms set forth in the settlement letter attached hereto as Exhibit "A" (the "Motion").

In support of the Motion, the Debtor respectfully represents as follows:

**BACKGROUND**

1. On February 1, 2006, the Debtor consented to the entry of an order for relief under chapter 11 of the Bankruptcy Code, and an order for relief was entered.

2. The Debtor's major asset is the leasehold interest in the 1,234-room Hyatt Regency Waikiki Resort & Spa ("Hotel"), located on approximately 129,455 square feet of leased land on Kalakaua Avenue. Hyatt Corporation ("Hyatt") has managed the Hotel since it opened.

3. The Debtor continues to operate its business as debtor-in-possession pursuant to 11 U.S.C. § 1107 and 1108.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. On February 13, 2006, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in this case, which consists of Wac, Inc., F4PI Investments, LLC, JLQ, LLC, Nippon Loans, LLC, and The Resolution and Collection Corp.

6. Pursuant to a Stipulated Order entered on April 11, 2006, the Debtor agreed to allow the Committee, under a Joint Defense Privilege Agreement, to participate in the confidential ground rent negotiations between the Debtor and the fee owners as described below.

7. On May 15, 2006, the Court entered the Order Authorizing Assumption of Debtor's Non-Residential Real Property Leases, authorizing the Debtor to assume the interests it holds (as lessee, sublessee or sub-sub-lessee as applicable) under the various ground leases for the Hotel.

8. On June 28, 2007, the Court entered an Order and related Findings of Fact and Conclusions of Law confirming the Joint Plan [for the Debtor and related entities] proposed by the Debtor and the Committee.[1]

---

[1] Capitalized terms not defined herein shall be ascribed the same meaning as provided in the Joint Plan.

9. As required under the Joint Plan, the Debtor has commenced the Japanese Case. Upon the timely confirmation of the Japanese Plan, an entity in which Hyatt holds an interest, W2007 Waikiki Holdings, L.L.C (the "Buyer"), will acquire the shares of NewCo which will in turn own the Debtor's leasehold interest in the Hotel and certain related assets pursuant to the Domestication Transaction described in the Joint Plan.

10. On August 1, 2007 (Japan time), the Tokyo District Court entered a "Commencement Order," which formally commenced the Japanese Case. *See* Certified Translation of Commencement Order attached as Exhibit "B" to Submission of Japanese Commencement Order and Certified Translation, filed herein on August 8, 2007.

11. On November 15, 2007 (Japan time), the Tokyo District Court issued an order approving the draft Japanese Plan submitted by Eiji Katayama, the reorganization trustee for the Debtor, for submission to creditors for balloting.

**THE LEASES AND SINKING FUND OBLIGATION**

12. The fee interests for the various parcels of land under the Hotel are owned by the Steiners, CK and the Okumoto Joint Irrevocable Trust ("Okumoto Trust"). All of these ground leases expire on December 31, 2047, and

they all contain provisions for the adjustment of rent effective as of January 1, 2007.[2]

13. The Steiners own the fee simple interest in six Hotel parcels totaling approximately 87,000 square feet of land, approximately 77,000 square feet of which is subleased to the Debtor, and approximately 10,000 square feet of which is leased directly to the Debtor. CK owns two of the Hotel parcels totaling approximately 27,455 square feet. The Okumoto Trust owns one parcel under the convention center/garage structure of approximately 15,000 square feet. All of these ground leases expire on December 31, 2047.

14. The Steiner leases consist of (a) a Lease dated August 17, 1953, as amended by instruments dated May 1, 1969, January 17, 1974, August 5, 1974, and, most recently, by that certain Fourth Amendment of Lease dated October 9, 1975 which completely amended and restated said lease, covering most of the parcels under the Hotel exclusive of the two Ewa-most parcels which are covered by a lease from CK (the "Hotel Lease"); and (b) an Indenture of Lease dated October 9, 1975, filed as Land Court Document No. 737643, and noted on Transfer Certificate of Title No. 497273, covering portions of the Debtor's convention center/parking garage (the "Garage Lease").

---

[2] Only the Steiner leases provide for percentage rent. The Steiner leases call for the Debtor to pay the higher of minimum rent or percentage rent.

15. The Hotel Lease is made by the Steiners, as master lessor, to CK, as master lessee; CK, in turn, subleases the parcels to Debtor. Both the master lease and the sublease contain identical rent terms. The sublease further provides that the sublessee has the right to negotiate and if necessary arbitrate the new lease rent terms under the master lease in the name of the master lessee, which result would be deemed applicable to the sublease.

16. The Garage Lease is made by the Steiners, as master lessors, to the Debtor, which subleased the premises to CK, which, in turn, sub-subleases the premises back to Debtor. As with the Hotel Lease structure, the lease, sublease and the sub-sublease contain the same rent terms, and the sublease and the sub-sublease also allow the sublessee and sub-sublessee to negotiate the terms of the new rent on behalf of all of the parties, which occurred.

17. The CK lease consists of a Lease dated May 3, 1974, filed as Land Court Document No. 678622 and recorded in Liber 9879 at Page 324, as amended by First Amendment to Lease dated November 16, 1976, filed as Land Court Document No. 789469 (the "CK Hotel Lease"). CK hold's the lessor's interest and the Debtor holds the lessee's interest under the CK Hotel Lease.

18. The Okumoto Trust lease consists of an Indenture of Lease dated December 1, 1953, recorded in Liber 2893 at Page 81, as amended by First Amendment of Lease dated May 2, 1974, recorded in Liber 9879 at Page 175 (the "Okumoto Lease").

19. On September 20, 2007, the Debtor filed its Renewed Motion for Order Approving Settlement Agreement with 2424 Kalakaua Associates (the "Steiner Rent Settlement Motion") whereby the Debtor sought authority to enter into a settlement to resolve the base and percentage rent payable for the ten-year period from January 1, 2007 through December 31, 2006.

20. Pursuant to an order entered on September 26, 2007, the Court approved the Steiner Rent Settlement Motion on an expedited basis.

**ARBITRATION PROCEEDING AND SINKING FUND**

21. Although the approval of the Steiner Rent Settlement Motion resolved the major rent adjustment issue with the Steiners, the Debtor's obligation under the Hotel Lease, Garage Lease and related subleases and sub-sublease to deposit into a "sinking fund," beginning January 1, 2007, funds adequate to cover the estimated cost of the demolition of the Hotel improvements at the termination of these leases, remains unresolved, and is the subject of a pending arbitration proceeding between the Debtor and the Steiners.[3] In July, the Debtor and the Steiners signed a Joint Arbitration Submission Agreement, which, among other things, set briefing deadlines and scheduled the arbitration hearing to commence December 3, 2007.

---

[3] The CK Hotel Lease also contains a similar sinking fund obligation. However, while CK has demanded arbitration to resolve the rent adjustment and sinking fund payment issues under its lease. The arbitration panel has not yet been fully appointed and the parties have not yet entered into a Joint Submission Agreement setting definitive briefing and arbitration dates.

22. The Debtor and the Landlords have recently agreed, subject to this Court's approval, to enter into a settlement of the Debtor's sinking fund obligation under the Hotel Lease, the Garage Lease, the CK Lease, and related subleases and sub-sublease on the terms set forth in the attached settlement letter (the "Settlement"). The Debtor understands that the Buyer and the Committee both support approval of the Settlement.

23. The terms of the Settlement are as follows:

    a. The parties agree that the probable cost of demolition and removal of the improvements on the premises demised by the Hotel Lease, the Garage Lease, the CK Hotel Lease and the Okumoto Lease is $119,580,000, and that the monthly amount which, when compounded at prevailing interest rates from January 1, 2007, will yield the total demolition and removal costs on January 1, 2046 of the improvements is $59,000.00.

    b. The Debtor shall make monthly payments of $59,000 effective for the period January 1, 2007 through December 31, 2016, allocated as follows: (a) $46,834.20 into a trust account or accounts to be established pursuant to the Hotel Lease, CK Hotel Lease and related subleases and sub-sublease ("Hotel Sinking Fund"), which the parties agree is the amount currently estimated to yield the total demolition and removal costs of improvements on the premises demised by the Hotel Lease and CK Hotel Lease on January 1, 2046; and (b) $12,165.80 into a trust account to be established pursuant to the Garage Lease (whether or not the same account as the Hotel Sinking Fund, hereinafter referred to as the "Garage Sinking Fund"), which the parties agree is the amount currently estimated to yield the total demolition and removal costs of improvements on the premises

59509

demised by the Garage Lease <u>and</u> Okumoto Lease on January 1, 2046.[4]

  c.  Back payments on the Settlement shall accrue simple interest at 6.10% per annum.

## RELIEF REQUESTED AND BASIS

24. Federal Rule of Bankruptcy Procedure 9019(a) authorizes this Court to approve a compromise or settlement. This section provides that "on motion by the trustee and after hearing on notice to creditors . . . the court may approve a compromise or settlement." Fed.R.Bankr. P. 9019(a).

25. Under the standards established by the Ninth Circuit, the Court should approve a compromise or settlement if it is "fair and equitable." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 838 F.2d 610, 620 (9th Cir. 1988) (quoting *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied, Martin v. Robinson*, 479 U.S. 854 (1986)). Specific factors to be considered in determining whether a compromise or settlement is fair and equitable include: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the

---

[4] The Steiners and CK acknowledge that inclusion of the cost of demolishing and removing the improvements on the premises demised by the Okumoto Lease or the sublease between CK, as sublessor, and the Debtor, as sublessee dated May 2, 1974 ("CK Okumoto Sublease"), in the amount to be deposited into the Garage Sinking Fund is not an admission that the Debtor is obligated to establish a sinking fund for the cost of demolishing or removing the improvements demised by the Okumoto Lease or CK Okumoto Sublease at the expiration or termination of the Okumoto Lease and CK Okumoto Sublease. The Debtor specifically denies that it has any such obligation under the Okumoto Lease and CK Okumoto Sublease.

U.S. Bankruptcy Court - Hawaii   #05-50011   Dkt # 1548   Filed 11/27/07   Page 9 of 19

9

59509

litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the proper deference to the reasonable views of parties having a paramount interest. *In re Woodson*, 838 F.2d at 620. *(citation omitted)*.

26. In evaluating the fairness of a compromise or settlement, "a trial or 'mini-trial' on the merits is not required." *Official Committee of Unsecured Creditors v. James Talcott, Inc. (In re International Distrib. Centers, Inc.)*, 103 B.R. 420, 423 (S.D.N.Y. 1989). Rather, the Court must simply consider the various factors that determine the reasonableness of the compromise. *In re A&C*, 784 F.2d at 1381. This Court should approve the settlement as long as it is above the "lowest point of reasonableness." *See In re International Distrib. Centers, Inc.*, at 423 (citations omitted).

27. The Settlement satisfies the foregoing standards. It is the result of extensive negotiations conducted through capable counsel. The parties settled in part because they were mindful of the difficulty of predicting how a panel of arbitrators would rule on the issue of the cost of demolition and removal of the improvements at the end of the leases. Significantly, the Settlement is supported by the Buyer (which would inherit the Debtor's obligations under the Settlement upon consummation of the transaction), as well as the Committee. Thus approval of this Motion furthers the paramount interests of creditors.

28. Unless this Motion is approved, the Debtor and Committee (and possibly the Buyer) will be forced to incur significant fees and expenses in the

arbitration proceeding. Approval of this Motion will thus save the estate substantial legal fees and costs.

WHEREFORE, the Debtor respectfully requests that the Court enter an order approving the Motion and authorizing the Debtor to settle the Debtor's obligations to demolish and remove the improvements on its leases with the Landlords and related subleases and sub-sublease at the expiration of the leases, subleases and sub-sublease as set forth in Exhibit "A" hereto, and granting such other relief as the Court deems fair and just.

DATED: Honolulu, Hawaii, November 27, 2007.

/s/ Chuck C. Choi
JAMES A. WAGNER
CHUCK C. CHOI
Attorneys for Debtor and Debtor in Possession

59509

November __, 2007

2424 Kalakaua Associates
c/o Wayne Nasser, Esq.
Ashford & Wriston
Alii Place
1099 Alakea Street, Suite 1400
Honolulu, Hawai`i 96813

C.K. (Nevada) ~~Corp.~~ LLC
c/o Kenneth B. Marcus, Esq.
Starn O'Toole Marcus & Fisher
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawai`i 96813

Re: <u>Hyatt Regency Waikiki Hotel Lease Sinking Fund</u>

Dear Messrs. Nasser and Marcus:

This letter memorializes the agreement among 2424 Kalakaua Associates ("2424 Kalakaua"), C.K. (Nevada) Corp. ("CK") and Azabu Buildings Co., Ltd. ("Azabu") regarding the amount to be deposited into the account(s) to be established by agreement of the parties for the ten (10)-year period commencing January 1, 2007 pursuant to:

    a. Paragraph 17 of that certain Lease dated August 17, 1953, recorded in the Bureau of Conveyances of the State of Hawai`i in Liber 2743, at Page 200, as amended by instruments dated May 1, 1969, filed in the Land Court of the State of Hawai`i as Document No. 590461; dated January 17, 1974, filed as Document No. 678617 and recorded in Liber 9879 at Page 4; dated August 5, 1974 and filed as Document No. 694356 and recorded in Liber 10108 at Page 376; and most recently by that certain Fourth Amendment of Lease dated October 9, 1975, filed as Document No. 737644 and recorded in Liber 10955 at Page 132, which said Fourth Amendment amended and restated said lease (2424 Kalakaua holds the lessor's interest, CK holds the lessee's/sublessor's interest and Azabu Buildings holds the sublessee's interest); together with Paragraph 17 of that certain Sublease dated May 3, 1974, filed in the Land Court as Document No. 678620, as amended by that First Amendment to Sublease dated November 16, 1976, filed in the Land Court as Document No. 789461 (said Lease and Sublease hereinafter collectively referred to as the "Hotel Leases");

    b. Paragraph 17 of that certain Indenture of Lease dated October 9, 1975, filed as Land Court Document No. 737643, and noted on Transfer Certificate of Title No. 497273 (2424 Kalakaua holds the lessor's interest, Azabu Buildings holds the lessee's/sublessor's and sub-sublessee's interests, and CK holds the sublessee/sub-sublessor's interest); together with Paragraph 17 of that certain Sublease dated October 9,

**EXHIBIT A**

2424 Kalakaua Associates
c/o Wayne Nasser, Esq.
C.K. (Nevada) Corp.
c/o Kenneth B. Marcus, Esq.
November __, 2007
Page 2

1975 filed in the Land Court as Document No. 737646 and Paragraph 17 in that certain (sub) Sublease dated October 9, 1975, filed in the Land Court as Document No. 737647, as amended by that certain First Amendment to (sub) Sublease dated November 16, 1976, filed in the Land Court as Document No. 789466 (said Lease, Sublease and Sub-sublease hereinafter collectively referred to as the "Garage Leases"); and

c. Paragraph 17 of that certain Lease dated May 3, 1974, filed as Land Court Document No. 678622 and recorded in Liber 9879 at Page 324, as amended by First Amendment to Lease dated November 16, 1976, filed as Land Court Document No. 789469 ("CK Hotel Lease") (CK hold's the lessor's interest and Azabu holds the lessee's interest).

2424 Kalakaua, C.K. and Azabu agree as follows:

1. The total estimated probable cost of demolition and removal of the improvements on the premises demised by the Hotel Leases, Garage Leases, CK Lease, and that certain Indenture of Lease dated December 1, 1953, recorded in Liber 2893 at Page 81, as amended by First Amendment of Lease dated May 2, 1974, recorded in Liber 9879 at Page 175 ("Okumoto Lease") on January 1, 2046, calculated as of November 2, 2007, is ONE HUNDRED NINETEEN MILLION FIVE HUNDRED EIGHTY THOUSAND AND NO/100 DOLLARS ($119,580,000) ("Probable Demolition Cost"). The monthly amount which, when compounded at prevailing interest rates from January 1, 2007, is projected to yield the Probable Demolition Cost is FIFTY-NINE THOUSAND AND NO/100 DOLLARS ($59,000.00).

2. Effective as of January 1, 2007, and thereafter on the first day of each successive month thereafter through December 31, 2016, Azabu shall deposit (a) the sum of FORTY-SIX THOUSAND EIGHT HUNDRED THIRTY-FOUR AND 20/100 DOLLARS ($46,834.20) into a trust account or accounts to be established pursuant to the Hotel Leases and CK Lease ("Hotel Sinking Fund"), which the parties hereto agree is the amount which, when compounded at prevailing interest rates, is currently estimated to yield the total demolition and removal costs of improvements on the premises demised by the Hotel Leases and CK Hotel Lease on January 1, 2046; and (b) the sum of TWELVE THOUSAND ONE HUNDRED SIXTY-FIVE AND 80/100 DOLLARS ($12,165.80) into a trust account to be established pursuant to the Garage Leases, which the CK and Azabu agree is the amount which, when compounded at prevailing interest rates, is currently estimated to yield the total demolition and removal costs of improvements on the premises demised by the Garage Leases and Okumoto Lease on January 1, 2046; provided, however, that 2424 Kalakaua and CK acknowledge and agree that inclusion of the cost of demolishing and removing the improvements on the premises demised by the Okumoto Lease in the amount to be deposited into the Garage Sinking Fund does not signify and shall not be construed as an admission or agreement by Azabu that Azabu is

Okumoto Sublease at the expiration or termination of the Okumoto Lease and CK Okumoto Sublease. Azabu specifically denies that it has any such obligation under the Okumoto Lease and CK Okumoto Sublease.

3. 2424 Kalakaua and CK specifically acknowledge and agree that by agreeing to the combined monthly deposit amount described in paragraph 2(a) above, rather than a separate deposit amount under each of the Steiner Hotel and CK Leases, and by agreeing to the amount and terms described in paragraph 2(b), Azabu has complied with its obligation under the Hotel Leases, CK Hotel Lease and Garage Leases, respectively, to agree upon the amount to be deposited into a trust account under Paragraph 17 of each said lease (including all applicable subleases and sub-sublease).

4. Details relating to the establishment of the trust account(s) described above and further terms and conditions thereof shall be negotiated by the parties promptly following execution of this agreement.

5. This agreement is conditioned on approval of the Bankruptcy Court in the matter of <u>Azabu Buildings Company, Ltd., aka Azabu Tatemono K.K., Debtor</u>, Case No. 05-5011 (RJF) (Chapter 11), United States Bankruptcy Court for the District of Hawaii. Azabu, at its sole expense, will immediately move to obtain such approval. 2424 Kalakaua shall support and CK shall not oppose the motion for approval. Neither 2424 Kalakaua nor CK will be required to waive any experts' or attorney privileges if required to testify. Until all opportunities have expired to appeal the Bankruptcy Court's approval of this agreement, the arbitration invoked by 2424 Kalakaua by letter to Sheryl L. Nicholson, Esq. from Wayne Nasser, Esq. dated November 2, 2006, and the arbitration invoked by CK by letter to Sheryl L. Nicholson from John A. Sopuch III dated August 1, 2007 shall remain pending.

6. Upon the later of the establishment of the Sinking Fund (including, without limitation, the execution of a trust agreement covering the Sinking Fund account(s) with a recognized Hawaii trust company or bank) or eleven (11) days following the entry of the Bankruptcy Court's order approving the settlement contained in this agreement (assuming no appeal is filed), Azabu, or its successor or assign, shall immediately pay all back deposits pursuant to this agreement, together with simple interest at 6.10% per annum on the arrearages.

7. The assumptions, formulae and methods upon which the deposits called for in this agreement were or may have been calculated shall not be binding upon the parties in any redetermination of the amount of the monthly sinking fund deposit at the beginning of a rent period as called for in paragraph 17 of the Hotel Leases, Garage Leases and CK Hotel Lease.

8. If any dispute arises as a result of this agreement, it shall be determined by arbitration as set forth in the Hotel Leases, Garage Leases and CK Lease, as applicable, for disputes not involving rent re-openings.

9. This agreement shall be binding upon and shall inure to the benefit of 2424 Kalakaua, CK and Azabu and their respective successors and assigns.

If you agree that the foregoing correctly recites the parties' agreement, please so indicate by signing below and returning a fully executed copy to Paul Johnson Park & Niles, c/o Corey Park and Sheryl Nicholson. This agreement may be executed in counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument.

Very truly yours,

Azabu Buildings Co., Ltd.


By _____
    Its

APPROVED AS TO FORM:


_____
Corey Y. S. Park
Sheryl L. Nicholson
Attorneys for Azabu Buildings Co., Ltd.

APPROVED AND ACCEPTED:

2424 Kalakaua Associates
By Steiner Family, Ltd., its General Partner

By _____
   K. James Steiner, Jr.
   Its Vice-President

APPROVED AS TO FORM:

_____
Wayne Nasser
Rosemary Fazio
Attorneys for 2424 Kalakaua Associates

APPROVED AND ACCEPTED:

C.K. (Nevada) Corp.

By _____
   Its

APPROVED AS TO FORM:

_____
Kenneth B. Marcus
Attorney for C.K. (Nevada) Corp.

cc: Scout Development Corporation
    and Ameritas Life Insurance Corp.
    c/o Deborah J. M. Chun, Esq.
    The Chuo Mitsui Trust & Banking Co., Ltd.
    c/o Paul Alston, Esq.

APPROVED AND ACCEPTED:

APPROVED AS TO FORM:

C.K. (Nevada) LLC
a Delaware limited liability company

    By:  HR Waikiki Note Investors, LLC
           a Delaware limited liability company,
           its sole member

        By:  Trinity HR Waikiki Holdings, LLC
              a Delaware limited liability company
              its sole member

            By: _____
                 Jon T. Miho
                 Its President

_____
Kenneth B. Marcus
Attorney for C.K. (Nevada) LLC

cc:  Scout Development Corporation
     and Ameritas Life Insurance Corp.
     c/o Deborah J. M. Chun, Esq.
     The Chuo Mitsui Trust & Banking Co., Ltd.
     c/o Paul Alston, Esq.

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AZABU BUILDINGS COMPANY LTD., aka AZABU TATEMONO K.K.,<br><br>      Debtor and<br>      Debtor-in-possession | Case No. 05-50011<br>(Chapter 11) |

### DECLARATION OF CHUCK C. CHOI IN SUPPORT OF DEBTOR'S MOTION FOR ORDER APPROVING SETTLEMENT OF SINKING FUND OBLIGATIONS

I, Chuck C. Choi, hereby declare that, if called as a witness in this action, I could and would testify competently of my own personal knowledge as follows:

1. I am an attorney licensed to practice before this Court and a partner at Wagner Choi & Evers, bankruptcy counsel for the Debtor. I make this declaration in support of the Motion for Order Approving Settlement of Sinking Fund Obligations ("Motion"). Terms used herein and not otherwise defined have the meaning given to them in the Motion.

2. I have reviewed the Motion and the factual assertions regarding the status of the case and the terms of the proposed Settlement are true and correct to the best of my knowledge, information and belief.

59509

3. Attached as Exhibit "A" to the Motion is a true and correct copy of the proposed Settlement by and between the Debtor and its Landlords.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Honolulu, Hawaii, November 27, 2007.

/s/ Chuck C. Choi
CHUCK C. CHOI

59509