WAGNER CHOI & EVERS
JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: wcelaw@wcelaw.com

Attorneys for AZABU BUILDINGS CO., LTD.

WATANABE ING & KOMEIJI, LLP
WAYNE K. MAU
First Hawaiian Center, Suite 2300
999 Bishop Street
Honolulu, Hawaii 96813
Telephone No.    (808) 544-8300
Telefacsimile No. (808) 544-8399
Email: wmau@wik.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS
AND AZABU LIQUIDATING TRUST

STUTMAN, TREISTER & GLATT PC
JEFFREY C. KRAUSE       CA 94053
GEORGE C. WEBSTER II   CA 82870
ERIC D. WINSTON           CA 202407
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone No.    (310) 228-5600
Telefacsimile No. (310) 228-5788
Email: gwebster@stutman.com, ewinston@stutman.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS
AND AZABU LIQUIDATING TRUST

In re

AZABU BUILDINGS COMPANY,
LTD., aka AZABU TATEMONO K.K.,

    Debtor and
    Debtor-in-possession

Case No. 05-50011
(Chapter 11)

Date:
Time:
Judge: Hon. Robert J. Faris

## EMERGENCY EX PARTE MOTION BY PLAN PROPONENTS AND AZABU LIQUIDATING TRUST FOR ORDER CLARIFYING THAT ESTIMATION OF CERTAIN CLAIMS BY TOKYO DISTRICT COURT, FOR PURPOSES OF VOTING IN JAPANESE CASE, SHALL NOT PREJUDICE PARTIES IN THE CHAPTER 11 CASE

### INTRODUCTION

Azabu Buildings Company, Ltd., debtor and debtor in possession herein ("Azabu" or the "Debtor"), the Official Committee of Unsecured Creditors appointed in the above-captioned chapter 11 case (the "Committee"; and together with the Debtor, the "Plan Proponents"), and the Azabu Liquidating Trust (the "Trust")[1] hereby move (the "Motion") for an order clarifying that any estimation of

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., and Subsequent Filing Entities as of April 23, 2007 (the "Joint Plan") as confirmed by the Order Confirming "Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., and Subsequent Filing Entities as of April 23, 2007" (the "Confirmation Order").

a claim in the Japanese Case, for purposes of voting on the Japanese Plan, shall not be deemed to have any effect on the rights of any party with respect to the allowance or disallowance of the estimated claim in this Case.

## JURISDICTION

This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The instant proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court possesses the requisite authority to grant the relief requested herein pursuant to sections 105(a) and 502 of the Bankruptcy Code.

## BACKGROUND

### A. Procedural Background

This case was commenced under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") by the filing of an involuntary petition against Azabu Buildings Co., Ltd. (the "Debtor") on November 10, 2005, pursuant to section 303 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Hawaii (the "Court"). On February 1, 2006, the Debtor consented to the entry of an order for relief under chapter 11 of the Bankruptcy Code, and an order for relief was entered. The Debtor continues to operate its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

On February 13, 2006, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"), which consists of Wac, Inc.; F4PI Investments, LLC; JLQ, LLC; Nippon Loans, LLC; and The Resolution and Collection Corp.

On June 14, 2007, this Court confirmed the Joint Plan.

The First Confirmation Implementation Date (as that term is defined in the Joint Plan) occurred on July 10, 2007. On the First Confirmation Implementation Date, pursuant to the Confirmation Order and section 5.7 of the Joint Plan, the Trust was formed. On that date, Alvarez & Marsal North America, LLC commenced its duties as Trustee. Also on the First Confirmation Implementation Date pursuant to the Confirmation Order and the Joint Plan, the AZABU Liquidating Trust Agreement was executed and the Debtor commenced transferring the Excluded Assets to the Trust. Pursuant to the Confirmation Order, the Joint Plan, and the AZABU Liquidating Trust Agreement, the Committee continues to serve as the AZABU Liquidating Trust Committee.

Pursuant to this Court's oral ruling at the Confirmation Hearing, and consistent with paragraph 21 of the Confirmation Order, the Debtor filed its petition to commence the Japanese Case on June 25, 2007. An order formally commencing the Japanese Case (the "Commencement Order") was entered by the Tokyo District Court on August 1, 2007, and Mr. Eiji Katayama was appointed as trustee (the "Japanese Trustee") in the Japanese Case.

## B. The Relevant Provisions of the Joint Plan

In anticipation of the commencement of the Japanese Case, the Joint Plan specifically provides that, with respect to claim allowance and distribution, the Chapter 11 Case shall be controlling. Section 5.4.3 of the Joint Plan provides:

> In the event of any conflict between the allowance, disallowance, priority, subordination, or the allowed amount of any Claim in the Chapter 11 Case and the Japanese Case, the Chapter 11 Case shall control for purposes of the Plan, including distributions under the Plan. Holders of Claims shall not be deemed to have waived any rights or to have made any admissions for purposes of the Chapter 11 Case by not appearing in or asserting or disputing Claim amounts in the Japanese Case.

Section 5.4.4 of the Joint Plan provides for all claims timely filed in the Japanese Case to be deemed timely filed in the Chapter 11 Case and similarly provides that all such claims shall be treated pursuant to the Joint Plan:

> Notwithstanding any bar date set by the Bankruptcy Court to the contrary, all timely Filed Japanese Case Claims shall be deemed to be timely Filed in the Chapter 11 Case and the holders thereof shall receive treatment on account of such Claims, to the extent they are Allowed Claims, in accordance with the provisions of the Plan. All Claims timely Filed in the Japanese Case will be allowed or disallowed and treated under the Plan as if timely Filed in the Chapter 11 Case. Notwithstanding the date of the filing of the Japanese Case or the date of the commencement of the Japanese Case, Claims filed in the Japanese Case shall, for purposes of allowance and treatment under the Plan and under the Japanese Plan, be deemed Claims as of the Petition Date.

The Joint Plan contemplates that creditors can participate in the Japanese Case for purposes of voting and filing proofs of claim, but for no other

purposes. The Joint Plan is specific in both authorizing such limited actions, and enjoining any other actions. Section 5.4.2 of the Joint Plan provides, in relevant part:

> **Injunction Against Participation In Japanese Case.** Except as provided herein, all holders of Claims against, or Equity Interests in, the Debtor shall be treated in accordance with, and receive distributions provided in, the Plan and, accordingly, as of the Confirmation Date and until the Effective Date, all holders of Claims against, or Equity Interests in, the Debtor shall be enjoined from opposing, contesting, objecting to, otherwise interfering with, or making any filing (other than the filing of claims, the casting of votes, or a filing indicating support for the Japanese Plan) in, the Japanese Case . . . .

As set forth in section 5.4.2 of the Joint Plan, the injunction provided for in the Joint Plan is based in part upon the fact that "all holders of Claims against, or Equity Interests in, the Debtor shall be treated in accordance with, and receive distributions provided in, the Plan . . . ." Joint Plan at section 5.4.2 (emphasis omitted).

Thus, in summary, the Joint Plan expressly permits creditors to participate in the Japanese Case for purposes of "the filing of claims, the casting of votes, or a filing indicating support for the Japanese Plan", Joint Plan at section 5.4.2, and recognizes the priority of the Joint Plan by providing that "[h]olders of Claims shall not be deemed to have waived any rights or to have made any admissions for purposes of the Chapter 11 Case by <u>not</u> appearing in or asserting or

disputing Claim amounts in the Japanese Case." Joint Plan at section 5.4.3 (emphasis added).

### C. Estimation in the Japanese Case for the Purposes of Voting on the Japanese Plan

As required by the Commencement Order, the Japanese Trustee submitted the "Approval/Disapproval Statement" (the "Statement") on or about October 1, 2007. In the Statement, the Trustee listed certain claims, or portions of claims as "disapproved" (the "Disputed Claims").

On November 5, 2007, the Court approved a Joint Motion for Order Authorizing Plan Proponents and Liquidating Trust to Enter into Stipulations for Limited Relief from the Automatic Stay and Certain Plan Injunctions, filed by the Plan Proponents and the Trust. Thereafter, creditors holding Disputed Claims entered into stipulations to modify the injunctive provisions of the Joint Plan to allow each holder of a Disputed Claim to file an assessment motion in Japan, and to join the Japanese Trustee in a request to stay all proceedings in connection with such assessment motion to allow the merits of the disputes regarding each Disputed Claim to be determined by this Court.

On November 15, 2007, the Tokyo District Court approved the draft Japanese Plan submitted by the Japanese Trustee to be disseminated to creditors for balloting.

The deadline for voting on the Japanese Plan is December 3, 2007,[2] long before this Court will address the merits of the Disputed Claims. In Japanese corporate reorganization cases holders of Disputed Claims are allowed to vote those claims in such amount as the Tokyo District Court determines to be appropriate. Solely for purposes of voting, the Tokyo District Court estimated an "approved" amount on account of each Disputed Claim in rough fashion equal to 50% of the total Disputed Claim, without receiving evidence or holding a hearing. As a result of this estimation process, *all* "disapproved" amounts are deemed "approved," solely for purposes of voting on the Japanese Plan, in an amount equal to 50% of the amount listed as "disapproved" in the Statement (the "Japanese Plan Voting Amount").

Among the many Disputed Claims in the Japanese Case are the claims of Beecher, Ltd. ("Beecher"), Wac, Inc. ("Wac"), and Preh, Inc. ("Preh"), who are parties to the Beecher Plan Settlement, approved by the Court at a hearing held on June 7, 2007. Under the Beecher Plan Settlement, Beecher, Wac and Preh are obligated to support, *i.e.*, cast ballots in favor of, the Japanese Plan. However, at

---

[2] Although the Joint Plan contemplates that the Trustee will vote the claims in the Japanese Case for creditors who submitted a delegation so requesting, out of an abundance of caution and to promote transparency in the Japanese Case and harmony between the Japanese Case and Chapter 11 Case, creditors have been encouraged to vote their own claims in the Japanese Case and the Trust anticipates that many will do so.

the time the parties entered into the Beecher Plan Settlement, they did not anticipate the Tokyo District Court establishing a Japanese Claims Voting Amount for Disputed Claims and the possible ramifications of casting a ballot based on the Japanese Claims Voting Amount.

## RELIEF REQUESTED

By the Motion, the Plan Proponents and the Trust seek an order making clear that the mere act of voting a claim in favor of or against the Japanese Plan shall not be deemed an acceptance or endorsement by any party of the allowable amount of such Disputed Claim as set forth in the Japanese Plan Voting Amount. In other words, the claim estimation in the Japanese Case, and votes filed based thereon, should have no affect on the allowance or disallowance of the claims in the Chapter 11 Case.

## BASIS FOR RELIEF

The Joint Plan expressly permits creditors to cast votes in the Japanese Case, while also providing that "all holders of Claims against, or Equity Interests in, the Debtor shall be treated in accordance with, and receive distributions provided in, the Plan." *Id.* at section 5.4.2. Since the Japanese Case can have no effect on the allowance of claims or distributions on account of such claims, the mere act of voting to accept the Japanese Plan does not directly evidence any sentiment on the part of the voting creditor, or any other party in

interest, with respect to the accuracy or relevance of the Japanese Plan Voting Amount.

"This Court is empowered to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title'. Included, is authority to interpret and clarify prior orders." *In re White Motor Credit Corp.*, 75 B.R. 944, 947 (Bankr. N.D. Ohio 1987) (quoting 11 U.S.C. § 105(a)). Such authority is reflected in section 105 of the Bankruptcy Code, which states that the Court "may issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *See generally Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004) (bankruptcy court's authority to enforce its own orders arises from Bankruptcy Code section 105(a)). The Court may make, *sua sponte*, "any determination necessary or appropriate to enforce or implement court orders or rules." 11 U.S.C. § 105(a). Further, the Court may, *sua sponte*, "hold a status conference" and there issue orders "prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." *Id.* at § 105(d). Granting the motion will clarify that, under the Joint Plan and Confirmation Order, this Court retains its authority to allow and disallow claims pursuant to Bankruptcy Code section 502.

Although the Plan Proponents and Trust are not presently aware of any party seeking to use a creditor's vote for estoppel or admission purposes, the Court undoubtedly has authority to provide "ground rules" to the parties in order to

466819v2

assure the just and efficient administration of the Chapter 11 Case, and implement the Joint Plan. *See* Federal Rule of Bankruptcy Procedure 3020(d). Requests for instructions are historically common in bankruptcies and receiverships. For example, the Court of Appeals for the Fifth Circuit has ruled that "[t]he District Court was in error in denying the Committee's motion for instructions defined the role of the Committee." *In re TMT Trailer Ferry, Inc.*, 434 F.2d 804, 807 (5th Cir. 1970), *cert. denied sub nom Kirkland v. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc.*, 402 U.S. 907 (1971); *see also Murray v. Roberts*, 103 F.2d 889 (2d Cir. 1939) (petitions for instruction in subway receivership regarding rejection of leases and other issues), *motion to defer cert. consideration granted*, 207 U.S. 528, and *cert. dismissed*, 311 U.S. 720 (1940). Such a ruling is appropriate in the present case to eliminate any potential chilling effect on voting in Japan by the holder of a Disputed Claim who might be concerned that casting a vote will later be used against it.

Under the Joint Plan, this Court has sole authority to determine the allowed amount of any claim. The estimation of claims in the Japanese Case is irrelevant to what the proper allowed amount of such claims should or will eventually be. Indeed, the estimation for voting purposes only would not be binding even if the parties were litigating the merits of the Disputed Claims in Japan. The temporary approval of 50% of each Disputed Claim is solely for voting purposes. The efficient and just administration of the Chapter 11 Case will be

466819v2

enhanced by the Court's clarification that the mere act of a creditor voting its claim in connection with the Japanese Case will not prejudice any party on the basis that such claim has been estimated for purposes of voting on the Japanese Plan.

**WHEREFORE**, the Plan Proponents and the Liquidating Trust pray that the Court enter an order: (a) granting the Motion; and (b) granting such further relief as the Court deems appropriate.

DATED: Honolulu, Hawaii, November 28, 2007.

Respectfully submitted,

/s/ Chuck C. Choi
JAMES A. WAGNER
CHUCK C. CHOI
Attorney for Debtor and
Debtor in Possession

/s/ George C. Webster II
JEFFREY C. KRAUSE,
GEORGE C. WEBSTER II
ERIC D. WINSTON, and
H. ALEXANDER FISCH
Stutman, Treister & Glatt Professional
Corporation
Co-Counsel to the Official Committee of
Unsecured Creditors and the Azabu
Liquidating Trust

/s/ Wayne K. Mau
WAYNE K. MAU
Watanabe, Ing & Komeiji LLP
Co-Counsel to the Official Committee of
Unsecured Creditors and the Azabu
Liquidating Trust

466819v2