WAGNER CHOI & EVERS
JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: wcelaw@wcelaw.com

Attorneys for AZABU BUILDINGS CO., LTD.

WATANABE ING & KOMEIJI, LLP
WAYNE K. MAU
First Hawaiian Center, Suite 2300
999 Bishop Street
Honolulu, Hawaii 96813
Telephone No.     (808) 544-8300
Telefacsimile No. (808) 544-8399
Email: wmau@wik.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
AZABU LIQUIDATING TRUST COMMITTEE,
AND AZABU LIQUIDATING TRUST

STUTMAN, TREISTER & GLATT PC
JEFFREY C. KRAUSE       CA 94053
GEORGE C. WEBSTER II  CA 82870
ERIC D. WINSTON         CA 202407
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone No.     (310) 228-5600
Telefacsimile No. (310) 228-5788
Email: gwebster@stutman.com, ewinston@stutman.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
AZABU LIQUIDATING TRUST COMMITTEE,
AND AZABU LIQUIDATING TRUST

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re

AZABU BUILDINGS COMPANY,
LTD., aka AZABU TATEMONO K.K.,

       Debtor and
       Debtor-in-possession

Case No. 05-50011
(Chapter 11)

Date: [non-hearing]
Time:
Judge: Hon. Robert J. Faris

## EMERGENCY EX PARTE MOTION BY PLAN PROPONENTS AND AZABU LIQUIDATING TRUST FOR APPROVAL OF STIPULATION AND ORDER REGARDING TRANSFER OF LOCK BOX PROCEEDS; EXHIBIT "A"

Azabu Buildings Company, Ltd., debtor and debtor in possession

herein (the "Debtor"), the Official Committee of Unsecured Creditors appointed in

the above-captioned chapter 11 case and the Azabu Liquidating Trust Committee

(collectively, the "Committee"; and together with the Debtor, the "Plan

Proponents"), and the Azabu Liquidating Trust (the "Trust")[1] hereby move, on an

*ex parte* basis, for approval of the Stipulation and Order Regarding Transfer of

---

[1]   Capitalized terms not defined herein shall have the meaning given to them in the Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., and Subsequent Filing Entities as of April 23, 2007 (the "Joint Plan") as confirmed by the Order Confirming Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., and Subsequent Filing Entities as of April 23,

59575

Lock Box Proceeds (the "Stipulated Order"), attached as Exhibit "A" hereto,[2] which is intended to preserve the respective rights asserted by the parties in and to the Lock Box funds as described below, notwithstanding the transfer of the Lock Box funds in accordance with the Joint Plan and the Japanese Plan, as described below and in the Stipulated Order.

## JURISDICTION

This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The instant proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. § 105(a).

## BACKGROUND

### A. Procedural Background

This case was commenced under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") by the filing of an involuntary petition against Azabu Buildings Co., Ltd. (the "Debtor") on November 10, 2005, pursuant to section 303 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Hawaii (the "Court").

---

2007 (the "Confirmation Order").

[2] The Stipulated Order signed by the parties will be lodged with the Court separately.

4

59575

On February 1, 2006, the Debtor consented to the entry of an order for relief under chapter 11 of the Bankruptcy Code, and an order for relief was entered. The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On June 14, 2007, at the conclusion of the confirmation hearing on the Joint Plan, this Court confirmed the Joint Plan. Pursuant to this Court's oral ruling at the confirmation hearing, and consistent with paragraph 21 of the Confirmation Order, the Debtor filed its petition to commence the Japanese Case on June 25, 2007 (Japan time) in the Tokyo District Court ("TDC"). An order formally commencing the Japanese Case was entered by the TDC on August 1, 2007 (Japan time), and Mr. Eiji Katayama was appointed as reorganization trustee (the "Japanese Trustee") in the Japanese Case.

On November 15, 2007 (Japan time), the TDC approved the draft Japanese reorganization plan (the "Japanese Plan") submitted by the Japanese Trustee to be disseminated to creditor for balloting. On December 7, 2007 Japan time, the TDC entered the Japanese Confirmation Order.

**B.     Transfer of Lock Box under Joint Plan and Japanese Plan.**

The Joint Plan contemplates the transfer of the Lock Box funds from CMTB directly to the Trust, subject to the competing claims of the Waikiki Entities, CMTB, Beecher and RCC to a portion or all of the funds in the Lock Box. The Confirmation Order provides, *inter alia*, that:

29. After the confirmation of a Japanese Plan or the commencement of a Japanese Case that is not a corporate reorganization case, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtor is authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee, for the benefit of the AZABU Liquidating Trust, all of the Debtor's and the Estate's right, title interest in and to the Lock Box. Before and after that transfer to the extent permitted by applicable law, the Lock Box shall be subject to: (a) CMTB's setoff rights, which shall be or shall have been assigned to the Debtor under the CMTB Settlement Agreement; (b) the security interests of the Waikiki Entities; and (c) the disputed Liens of Beecher, Ltd. and the Resolution Collection Corporation (the 'RCC') in the Lock Box to the same extent, validity and priority from and after the transfer of the Lock Box to the Liquidating Trust as such disputed Liens had immediately prior to that transfer, and with regard to the RCC and Beecher, subject to all offsets, counterclaims, defenses and equitable subordination claims (collectively, the 'Defenses and Counterclaims') and the terms of the Beecher Settlement Agreement, notwithstanding any other provision of the Plan or the Confirmation Order.

*See* Confirmation Order at ¶ 29.

However, the Japanese Plan requires that funds in the Lock Box be transferred initially to an account controlled by the Japanese Trustee (the "New Account") prior to being transferred to the Trust. Moreover, the Japanese Plan requires that the Lock Box funds be transferred to the Japanese Trustee's New Account within 10 days of entry of the Japanese Confirmation Order, or December 17, 2007, Japan time.

In order to transfer the Lock Box funds to the New Account, CMTB has required, in accordance with customary Japanese banking procedures, various documents from the Debtor as well as the return of the Waikiki Entities' Pledged CDs and cancellation of the Original Pledge Agreement.

The parties to the Stipulated Order (the Japanese Trustee, Plan Proponents, Beecher, CMTB, RCC and the Waikiki Entities) wish to ensure that the Lock Box funds be transferred in accordance with the Japanese Plan while at the same time preserving their respective rights under the Joint Plan, the Confirmation Order, and the various settlements approved by the Court.

## RELIEF REQUESTED AND BASIS FOR RELIEF

By the Motion, the Plan Proponents and the Trust seek an order approving the Stipulated Order which is intended to preserve status quo among the parties insofar as their relative rights and interests to the Lock Box pending the transfer of the funds from CMTB to the New Account and thereafter, to the Trust.

The Court has authority to implement the Confirmation Order and other orders entered in this case. *In re White Motor Credit Corp.*, 75 B.R. 944, 947 (Bankr. N.D. Ohio 1987) ("This Court is empowered to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. Included, is authority to interpret and clarify prior orders.") (quotations omitted); *see generally Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004) (bankruptcy court's authority to enforce its own orders arises from Bankruptcy

Code section 105(a)).  Such authority is reflected in section 105 of the Bankruptcy Code, which states that the Court "may issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  *See generally Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004) (bankruptcy court's authority to enforce its own orders arises from Bankruptcy Code section 105(a)).  The Court may make, *sua sponte*, "any determination necessary or appropriate to enforce or implement court orders or rules."  11 U.S.C. § 105(a).

Granting the Motion and entering the Stipulated Order will implement the Confirmation Order, and the orders approving the various settlements entered into in connection with the Joint Plan as recited in the Stipulated Order.

**WHEREFORE**, the Plan Proponents and the Liquidating Trust pray that the Court enter an order: (a) granting the Motion; and (b) granting such further relief as the Court deems appropriate.

DATED: Honolulu, Hawaii, December 13, 2007.

Respectfully submitted,

/s/ Chuck C. Choi
JAMES A. WAGNER
CHUCK C. CHOI
Attorney for Debtor and
Debtor in Possession

59575

/s/ Jeffrey C. Krause
JEFFREY C. KRAUSE,
GEORGE C. WEBSTER II
ERIC D. WINSTON, and
H. ALEXANDER FISCH
Stutman, Treister & Glatt Professional
Corporation
Co-Counsel to the Official Committee of
Unsecured Creditors, the Azabu
Liquidating Trust Committee, and the
Azabu Liquidating Trust


/s/ Wayne K. Mau
WAYNE K. MAU
Watanabe, Ing & Komeiji LLP
Co-Counsel to the Official Committee of
Unsecured Creditors, the Azabu
Liquidating Trust Committee, and the
Azabu Liquidating Trust

59575

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re

AZABU BUILDINGS
COMPANY LTD., aka AZABU
TATEMONO K.K.,

        Debtor and
        Debtor-in-possession

Case No. 05-50011
(Chapter 11)

## DECLARATION OF CHUCK C. CHOI IN SUPPORT OF EMERGENCY EX PARTE JOINT MOTION FOR ORDER APPROVING STIPULATION AND ORDER REGARDING LOCK BOX PROCEEDS

I, Chuck C. Choi, hereby declare that, if called as a witness in this action, I could and would testify competently of my own personal knowledge as follows:

1.    I am an attorney licensed to practice before this Court and a partner at Wagner Choi & Evers, bankruptcy counsel for the Debtor. I make this declaration in support of the Motion for Order Approving Stipulation and Order Regarding Lock Box Proceeds ("Motion"). Terms used herein and not otherwise defined have the meaning given to them in the Motion.

2.    I have reviewed the Motion and the factual assertions regarding the status of the Debtor's Chapter 11 Case, and the Japanese Case are true and correct to the best of my knowledge, information and belief.

59575

3.      Attached as Exhibit "A" to the Motion is a true and correct copy of the proposed Stipulation and Order Regarding Transfer of Lock Box Proceeds by and among the Debtor, the Committee, the Japanese Trustee, the Trust, Beecher, the Waikiki Entities and RCC.

4.      I am informed that the New Account will also be at CMTB and that the parties involved in the transfer of the Lock Box proceeds to the Japanese Trustee's New Account (the Japanese Trustee, CMTB, the Waikiki Entities and the Debtor) anticipate the transfer occurring on December 17, 2007 (Japan time) which is the deadline for the transfer under the Japanese Plan.  I am also informed that the Waikiki Entities will not deliver the Pledged CDs to CMTB or cancel the Original Pledge Agreement unless and until the Stipulated Order is approved.

I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Honolulu, Hawaii, December 13, 2007.


/s/ Chuck C. Choi
CHUCK C. CHOI

59575

WAGNER CHOI & EVERS
Attorneys at Law
JAMES A. WAGNER
CHUCK C. CHOI
JAMES F. EVERS
NEIL J. VERBRUGGE
Topa Financial Center, Fort St. Twr.
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone No.     (808) 533-1877
Telefacsimile No.  (808) 566-6900
Email:  wcelaw@wcelaw.com

Counsel for Debtor and Debtor-in-Possession
AZABU BUILDINGS COMPANY, LTD.

WATANABE ING & KOMEIJI, LLP
WAYNE K. MAU
First Hawaiian Center, Suite 2300
999 Bishop Street
Honolulu, Hawaii   96813
Telephone No.     (808) 544-8300
Telefacsimile No.  (808) 544-8399
Email:  wmau@wik.com

STUTMAN, TREISTER & GLATT PC
JEFFREY C. KRAUSE          CA 94053
ERIC D. WINSTON            CA 202407
H. ALEXANDER FISCH         CA 223211
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone No.     (310) 228-5600
Telefacsimile No.  (310) 228-5788
Email:  jkrause@stutman.com, ewinston@stutman.com
afisch@stutman.com

Co-Counsel for OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
AZABU LIQUIDATING TRUST AND AZABU LIQUIDATING TRUST
COMMITTEE

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) Case No. 05-50011 (RJF) |
| | ) (Chapter 11) |
| | ) |
| AZABU BUILDINGS COMPANY | ) |
| LTD., aka AZABU TATEMONO K.K. | ) |
| | ) DATE: |
| Debtor. | ) TIME: |
| | ) JUDGE: Honorable Robert J. Faris |
| | ) |

## STIPULATION AND ORDER REGARDING
## TRANSFER OF LOCK BOX PROCEEDS

This Stipulation and Order Regarding Transfer of Lock Box Proceeds

("Stipulation and Order"), is entered into, subject to Court approval, by and among

Azabu Buildings Company, Ltd., the debtor and debtor-in-possession (the

"Debtor"), the Azabu Liquidating Trust (the "ALT"), the Official Committee of

Unsecured Creditors in the above-captioned case and the Azabu Liquidating Trust

Committee (collectively, the "Committee"), Eiji Katayama, solely in his capacity

as the reorganization trustee (the "Trustee") for the Debtor in its pending corporate

reorganization case in the Tokyo District Court, Waikiki First Finance Corp. and

Waikiki S.F. LLC (together, the "Waikiki Entities"), The Chuo Mitsui Trust &

Banking Co., Ltd. ("CMTB"), Beecher, Ltd. ("Beecher"), and the Resolution

Collection Corporation ("RCC"), through their undersigned counsel with reference

to the following facts:

A.     On November 10, 2005, an involuntary chapter 11 petition was filed against the Debtor in the United States Bankruptcy Court for the District of Hawaii (the "Court"), commencing this Chapter 11 Case.[1]

B.     On February 1, 2007, the Debtor consented to the entry of an order for relief under chapter 11 of the Bankruptcy Code, and an order for relief was entered.

C.     On June 26, 2007, the Court entered an Order Granting Joint Motion for Order Authorizing Plan Proponents to Enter into Settlement Agreement with Waikiki Entities and to Allow Waikiki Entities to Change Their Votes, which authorized the Plan Proponents to enter into a Plan Settlement Agreement as of June 4, 2007 with the Waikiki Entities.  Among other things, the Plan Settlement Agreement required the Waikiki Entities to withdraw their objections to confirmation of the Joint Plan as well as the Japanese Plan provided that the Joint Plan was modified to provide that:  (a) the Waikiki Entities would retain their existing liens/security interests on the Hotel, its FF&E, and the Lock Box funds, including, but not limited to the four (4) certificates of deposit pledged to the Waikiki Entities (the "Pledged CDs") pursuant to a pledge agreement (the "Original Pledge Agreement"), i.e., the Waikiki Entities' liens/security interests,

---

[1]     Capitalized terms not defined herein shall have the meanings given them in the Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for [the Debtor] and Subsequent Filing

were allowed to "ride through" (i.e., not transferred to the Plan Note or the assets of the ALT) until a sale of the Hotel and related property wherein the liens/security interests of the Waikiki Entities on those assets would be transferred to the cash proceeds received by ALT by the sale, subject to all of the estate's defenses and counterclaims; and (b) the adequate protection interest rate used to pay the Waikiki Entities was increased from 1.75% over three-month LIBOR to 1.90% over three-month LIBOR from the date of the approval of the settlement. The Plan Settlement Agreement with the Waikiki Entities did not resolve the counterclaims and objections asserted by the Plan Proponents against the secured proofs of claim filed by the Waikiki Entities and CMTB (the "CMTB Adversary Proceeding").

D.      On July 19, 2007, the Court entered an Order Granting Joint Motion for Order Authorizing Plan Proponents to Enter Into Settlement with Beecher, Ltd. and to Allow Beecher, Ltd. to Change Their Votes, as Modified, which authorized the Plan Proponents to enter into the Beecher Plan Settlement as of June 7, 2007. Among other things, the Beecher Plan Settlement required Beecher to withdraw its objections to confirmation of the Joint Plan and vote in favor of the Joint Plan as well as the Japanese Plan provided that the Joint Plan was modified to provide that: (a) Beecher would retain its disputed lien ("Beecher's Alleged Lien") on the Hotel real property, subject to all defenses and

Entities, Dated as of April 23, 2007 (the "Joint Plan").

counterclaims of the estate and pre-existing liens pending a final order allowing or disallowing the Beecher's Alleged Lien; and (b) Beecher's Alleged Lien would attach to the proceeds of the Equity Sale. The Beecher Plan Settlement reserved Beecher's right to object to the Joint Plan insofar as its treatment of Beecher's asserted security interest in approximately $18.3 million of the Debtor's Lock Box funds on account of a garnishment order issued in April, 2002 by the Tokyo District Court.

      E.    On July 11, 2007, the Court entered an Order Granting Joint Motion for Order Authorizing Plan Proponents to Enter into Global Settlement Agreement with the Chuo Mitsui Trust & Banking Co., Ltd. and Waikiki Entities (the "Global Settlement Order") which authorized the Plan Proponents to enter into separate settlement agreements with CMTB and the Waikiki Entities as of June 14, 2007 that, among other things, finally settled the CMTB Adversary Proceeding, Allowed the secured claims of WFFC and WSFC in the combined amount of $330 million (plus interest and reasonable attorneys' fees and costs incurred as an oversecured creditor), as provided in the Waikiki Entities' Global Settlement Agreement in this Chapter 11 Case, and required CMTB and the Waikiki Entities to pay a total of $13 million to the estate. In addition, the CMTB Global Settlement Agreement provided for the assignment of CMTB's setoff rights to the Lock Box funds to the estate, and the transfer of the Lock Box to the Debtor or the

ALT "subject to the (a) Liens of the Waikiki Entities to the same extent they are presently subject to such Liens and to the terms of the Waikiki Entities' Global Settlement Agreement and the Plan Settlement Agreement, and (b) the setoff rights asserted by CMTB to the extent applicable." *See* CMTB Global Settlement Agreement at ¶ 3. Similarly, the Waikiki Entities' Global Settlement Agreement provides that, only "[a]fter the Waikiki Entities receive Payment In Full, the Waikiki Entities shall release all of their rights, claims, liens, and interests in the collateral securing their claims, including . . . the Hotel, the cash collateral, the Lock Box, the Pledged CDs, FF&E, and all other personal property collateral . . . Also . . . the Waikiki Entities shall consent to the exercise of CMTB's assigned setoff rights against the Lock Box funds by either Azabu or the Liquidating Trust." *See* Waikiki Entities' Global Settlement Agreement at ¶ 5. Finally, the Global Settlement Order provides that the Waikiki Entities "Allowed secured claim shall be unassailable and not contingent on any further determination under applicable law or by the Court regarding recovery or marshalling rights of any other party in interest, including, but not limited to Beecher." "[T]he allowance and payment of the Waikiki Entities' secured claims as provided under the Settlements is without prejudice to any rights, claims, liens or interests of all parties (and objections thereto) that were preserved in the Beecher Plan Settlement. . . ." *See* Global Settlement Order at ¶ 5.

F.    On June 28, 2007, the Court entered Findings of Fact and

Conclusions of Law and an Order confirming the Joint Plan (the "Confirmation

Order").

G.    The Confirmation Order provides, *inter alia*, that

> 29.  After the confirmation of a Japanese Plan or the commencement of a Japanese Case that is not a corporate reorganization case, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the Bankruptcy Code, the Debtor is authorized and directed to transfer, grant, assign, convey, set over, and deliver to the Liquidating Trustee, for the benefit of the AZABU Liquidating Trust, all of the Debtor's and the Estate's right, title interest in and to the Lock Box.  Before and after that transfer to the extent permitted by applicable law, the Lock Box shall be subject to: (a) CMTB's setoff rights, which shall be or shall have been assigned to the Debtor under the CMTB Settlement Agreement; (b) the security interests of the Waikiki Entities; and (c) the disputed Liens of Beecher, Ltd. and the Resolution Collection Corporation (the 'RCC') in the Lock Box to the same extent, validity and priority from and after the transfer of the Lock Box to the Liquidating Trust as such disputed Liens had immediately prior to that transfer, and with regard to the RCC and Beecher, subject to all offsets, counterclaims, defenses and equitable subordination claims (collectively, the 'Defenses and Counterclaims') and the terms of the Beecher Settlement Agreement, notwithstanding any other provision of the Plan or the Confirmation Order.

*See* Confirmation Order at ¶ 29.

H.    On June 25, 2007 (Japan time), the Debtor filed its petition for

commencement of a corporate reorganization proceeding in the Tokyo District

Court (8th Civil Division), and the Tokyo District Court immediately issued an

"Investigation Order" appointing Eiji Katayama as the examiner for the Debtor in the Japanese Case.

I.     On August 1, 2007 (Japan time), the Tokyo District Court entered a "Commencement Order," which formally commenced the Japanese Case, and appointed the Trustee in the Japanese Case.

J.     On November 15, 2007 (Japan time), the Tokyo District Court issued an order approving the draft Japanese Plan submitted by the Trustee for submission to creditors for balloting. The deadline for balloting in the Japanese Case is December 3, 2007.

K.     The Japanese Plan that was sent to creditors for balloting provides for the transfer of the Lock Box funds to an account controlled by the Trustee (the "New Account") prior to the funds being transferred to the ALT. In order to transfer the Lock Box funds to the New Account, CMTB has required, in accordance with customary Japanese banking procedures, various documents from the Debtor as well as the return of the Waikiki Entities' Pledged CDs and cancellation of the Original Pledge Agreement. The Trustee has agreed to provide the Waikiki Entities new CDs ("New Pledged CDs") and to replace the Original Pledge Agreement relating to the New Account preserving, to the same extent, validity and priority, the Waikiki Entities' rights and interests in the Lock Box

funds as they currently hold with the current Pledged CDs and the Original Pledge Agreement.

L.     The documentation required by CMTB (e.g., return of the New Pledged CDs from the Waikiki Entities and cancellation of the replacement pledge agreement) must be provided before the opening of the New Account for the benefit of the ALT.

M.     The parties hereto wish to ensure that the transfer of the Lock Box funds from CMTB to the New Account, and from the New Account to the ALT, is accomplished while preserving their respective rights under the Joint Plan, the Confirmation Order, and the various settlements described above.

NOW, THEREFORE, based upon the Recitals, and for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, by and through their respective counsel, acknowledge and agree as follows:

1.     **Incorporation of Recitals.** The Recitals are incorporated herein and are true and correct.

2.     **Waikiki Entities' Release of Pledged CDs in Favor of Waikiki Entities.** The Waikiki Entities are authorized to return the Pledged CDs and cancel the Original Pledge Agreement, properly endorsed by the pledgee, to CMTB, subject to the Trustee simultaneously providing the Waikiki Entities with a replacement CD and a replacement pledge of the Lock Box funds that will preserve

all of the Waikiki Entities' rights and interests in the Lock Box Funds being transferred to the New Account in the same amount and priority as currently held pursuant to the Pledged CDs and the Original Pledge Agreement.

3. **Waikiki Entities' Release of New Pledged CDs in Favor of Waikiki Entities.** The Waikiki Entities are authorized to return the New Pledged CDs to the New Account Bank and cancel the replacement pledge of the Lock Box funds, subject to ALT providing the Waikiki Entities satisfactory evidence that the funds in the New Account being transferred to the ALT in accordance with the Japanese Plan, will be held by the ALT in a separate segregated account subject to the Waikiki Entities' rights and interests, including the Waikiki Entities lien/security interests on the Lock Box funds to the same extent, validity and priority as the Waikiki Entities' had in the Lock Box funds immediately prior to the transfer of the Lock Box funds from CMTB to the New Account and as if the Pledged CDs were not returned and the Original Pledge Agreement were not cancelled.

4. **Preservation of CMTB's Setoff Rights.** The transfer of the Lock Box funds to the New Account and the transfer of the New Account funds to the ALT, as well as creation of the New Pledged CDs and the segregated account, shall not affect, modify, or impair in any manner whatsoever, the setoff rights asserted by CMTB in and to the Lock Box funds, which rights are now held by the

estate, and shall not affect, modify, or impair in any manner whatsoever, any challenges to such setoff rights that may be asserted. The CMTB set off rights with respect to the Lock Box funds shall continue with respect to the Lock Box funds transferred to the New Account and the ALT to the same extent, validity and priority from and after the transfer of the Lock Box funds to the ALT and the creation of the segregated account as CMTB set off rights had in the Lock Box funds immediately prior to the transfer of the Lock Fox funds from CMTB to the New Account.

     5.    **Preservation of RCC's and Beecher's Rights.** The transfer of the Lock Box funds to the New Account and the transfer of the New Account funds to the ALT, as well as creation of the New Pledged CDs and the segregated account, shall not affect, modify, or impair in any manner whatsoever, the disputed liens asserted by the RCC and Beecher, and shall not affect, modify, or impair in any manner whatsoever, any of the defenses and counterclaims that may be asserted. The RCC and Beecher disputed liens and any other rights and interests asserted by the RCC and Beecher with respect to the Lock Box funds, if any, shall continue with respect to the Lock Box funds transferred to the New Account and the ALT and the creation of the segregated account, to the same extent, validity and priority from and after the transfer of the Lock Box funds to the ALT as the

U.S. Bankruptcy Court - Hawaii   #05-50011   Dkt # 1605   Filed 12/13/07   Page 21 of 24

RCC and Beecher had in the Lock Box funds immediately prior to the transfer of the Lock Fox funds from CMTB to the New Account.

6. **No Change of Status Quo**. The parties hereto acknowledge and agree that the transfer of the Lock Box funds to the New Account, the creation of the New Pledged CDS, the subsequent transfer from the New Account to the ALT and the creation of the segregated account are without prejudice to their respective rights reserved or granted under the Joint Plan, the Confirmation Order and the various settlements made by the parties, and that the respective rights of such parties shall not be affected, modified or impaired in any manner whatsoever by reason of such transfers or the return of the Pledged CDs or the Original Pledge Agreement. For avoidance of doubt, it is the parties express intention that the respective rights asserted by the parties in and to the Lock Box funds, by way of the Pledged CDs or otherwise, be determined as if the funds remain in the possession of CMTB and the Pledged CDs were not returned and the Original Pledge Agreement was not cancelled, notwithstanding the transfer of such funds into the New Account and from the New Account to the ALT; the return of the Pledged CDs and the New Pledged CD; the cancellation of the Original Pledge Agreement; and the cancellation of the replacement pledge agreement. The rights/ liens/interests preserved hereunder shall be to the same extent, priority and validity

that such rights/liens/interests had, if any, immediately prior to the transfer, perfected by operation of law upon the approval of this Stipulation and Order.

**IT IS SO ORDERED**

STIPULATED AND AGREED:

_____

Eiji Katayama

Reorganization Trustee for Debtor

_____

Chuck C. Choi

Counsel for Debtor and
Debtor-in-Possession

_____

Jeffrey C. Krause

Counsel for Azabu Liquidating Trust,
Azabu Liquidating Trust Committee,
and Official Committee Of Unsecured
Creditors

_____

Oscar Garza

Counsel for Waikiki First Finance
Corp. and Waikiki S.F. LLC

_____

Paul Alston

Counsel for The Chuo Mitsui
Trust & Banking Co., Ltd.

_____

Sidney P. Levinson

Counsel for Beecher, Ltd.

_____

Michael A. Yoshida

Counsel for Resolution Collection
Corporation

_____

In re Azabu Buildings Co., Ltd., Bk. No. 05-50011 (Chapter 11); Stipulated Order
Regarding Transfer of Lock Box Proceeds