WAGNER CHOI & VERBRUGGE
JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: wcelaw@wcelaw.com

Attorneys for AZABU BUILDINGS CO., LTD.

WATANABE, ING & KOMEIJI, LLP
WAYNE K.T. MAU
First Hawaiian Center, Suite 2300
999 Bishop Street
Honolulu, Hawaii   96813
Telephone No.     (808) 544-8300
Telefacsimile No.  (808) 544-8399
Email: wmau@wik.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
AZABU LIQUIDATING TRUST COMMITTEE,
AND AZABU LIQUIDATING TRUST

STUTMAN, TREISTER & GLATT PC
JEFFREY C. KRAUSE      CA 94053
GEORGE C. WEBSTER II  CA 82870
ERIC D. WINSTON       CA 202407
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone No.     (310) 228-5600
Telefacsimile No.  (310) 228-5788
Email: gwebster@stutman.com, ewinston@stutman.com

Attorneys for OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
AZABU LIQUIDATING TRUST COMMITTEE,
AND AZABU LIQUIDATING TRUST

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>AZABU BUILDINGS COMPANY,<br>LTD., aka AZABU TATEMONO K.K.,<br><br>       Debtor and<br>      Debtor-in-possession | Case No. 05-50011<br>(Chapter 11)<br><br><br>Date:   [non-hearing]<br>Time:<br>Judge:  Hon. Robert J. Faris |

## EMERGENCY EX PARTE MOTION BY PLAN PROPONENTS AND AZABU LIQUIDATING TRUSTEE FOR APPROVAL OF CLOSING AGREEMENT WITH WAIKIKI ENTITIES; EXHIBITS "A"-"C"

Azabu Buildings Company, Ltd., debtor and debtor in possession

herein (the "Debtor"), the Official Committee of Unsecured Creditors appointed in

the above-captioned chapter 11 case and the Azabu Liquidating Trust Committee

(collectively, the "Committee"; and together with the Debtor, the "Plan

Proponents"), and the Trustee of the Azabu Liquidating Trust (the "Trustee"; with

the Plan Proponents, the "Movants")[1] hereby jointly move, on an *ex parte* basis,

---

[1]    Capitalized terms not defined herein shall have the meaning given to them in the Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., and Subsequent Filing Entities as of April 23, 2007 (the "Joint Plan") as confirmed by the Order Confirming Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., and Subsequent Filing Entities as of April 23, 2007 (the "Confirmation Order").

2

59687

and pursuant to 11 U.S.C. § 105(a), for entry of an order, to the extent necessary, approving a Closing Agreement between and among Waikiki First Finance Corp. and Waikiki S.F. LLC (collectively, the "Waikiki Entities"), the Azabu Liquidating Trust (the "Trust"), the Committee, the Debtor, and its affiliates and subsidiaries, including Azabu U.S.A. Corporation, debtor and debtor in possession in case number 07-00249 ("AUSA"), Azabu FF&E Subsidiary, Inc., debtor and debtor in possession in case number 07-00600 ("FF&E Subsidiary"), Azabu Newco Subsidiary, Inc., debtor and debtor in possession in case number 07-00601; ("NewCo"; and together with the Debtor, AUSA, FF&E Subsidiary, the "Debtor Parties") substantially in the form attached as Exhibit "A" hereto.[2]

Pursuant to the Closing Agreement, the Waikiki Entities, the Trust and the Debtor Parties agree, among other things, that: (a) certain funds from the Closing of the Equity Sale shall be set aside by escrow as a reserve for Disputed Amounts (as defined in the Closing Agreement) claimed by the Waikiki Entities; and (b) the Waikiki Entities will have no recourse as against the Buyer, NewCo or its assets upon consummation of the Equity Sale.

In support of the Motion, the Movants respectfully represent as follows:

---

[2] A proposed Order will be lodged with the Court separately.

# BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. On June 1, 2006, the Waikiki Entities timely filed proofs of claims secured by first and second priority security interests in the Hyatt Regency Waikiki Resort and Spa (the "Hotel"), in the amount of approximately $330 million (the "Waikiki Notes") plus interest, fees, costs, expenses, and reimbursements due under the loan documents (Claim 25 & Claim 26), and asserted that these notes are secured by the Debtor's interest in the Hotel, the proceeds generated by the Hotel, the furniture and other personal property used at the Hotel, and the Debtor's funds held in various depository accounts in Tokyo, Japan, including, but not limited to, a consolidated certificate of deposit (previously there were four (4) certificates of deposit) pledged to the Waikiki Entities (the "Pledged CD").

3. On November 6, 2006, the Waikiki Notes matured by their own terms, and the approximately $330 million principal, plus an unliquidated amount in fees, costs, reimbursements, and interest, became due and payable to the Waikiki Entities in full, subject to all offsets, counterclaims, defenses and equitable subordination claims. The Waikiki Entities contended that the Debtor was in default when it failed to pay the Waikiki Notes by November, 2006.

4.     In the course of the confirmation hearing, the Plan Proponents entered into a Plan Settlement Agreement with the Waikiki Entities. Among other things, the Plan Settlement Agreement: (i) resolved the Waikiki Entities' objections to the Plan; (ii) allowed the Waikiki Entities to retain their security interests in their collateral; (iii) provided for continued adequate protection payments at increased interest rates (namely, payments of 3 Month LIBOR plus 1.9%, then, after April 30, 2008, an increase to 3 Month LIBOR plus 5.75%); and (iv) granted the Waikiki Entities relief from the automatic stay and various Plan injunctions (with certain restrictions). On June 4, 2007, the Plan Proponents filed a joint motion for Court approval of the Plan Settlement Agreement, which motion was granted on June 7, 2007.

5.     On June 14, 2007, during the Joint Plan confirmation process but before the Joint Plan was confirmed, the Parties entered into the Waikiki Entities' Global Settlement Agreement (the "Global Settlement Agreement"), which expressly incorporated by reference the terms of the Plan Settlement Agreement. Pursuant to the Global Settlement Agreement, the parties agreed that: (i) the Waikiki Entities had Allowed Secured Claims totaling approximately $330,000,000; (ii) the Waikiki Entities could enforce all of their rights and remedies under applicable non-bankruptcy law beginning July 1, 2008; and (iii) the Waikiki Entities would support confirmation of the chapter 11 plan for the Debtor

that was consistent with the Global Settlement Agreement, as well as the corporate reorganization plan for the Debtor in the Tokyo District Court (the "TDC").

6.    Pursuant to this Court's oral ruling at the Confirmation Hearing, and consistent with paragraph 21 of the Confirmation Order, the Debtor filed a petition to commence the Japanese Case on June 25, 2007 with the 8th Division of the Civil Section of the TDC. On August 1, 2007, the TDC issued an order formally commencing the Japanese Case and appointed Eiji Katayama as the Japanese trustee for the Debtor (the "Japanese Trustee").

7.    On November 14, 2007, the Japanese Trustee submitted a Proposed Reorganization Plan dated November 2, 2007 (the "Japanese Plan") to the TDC. On December 7, 2007, the TDC issued an order confirming the Japanese Plan (the "Japanese Confirmation Order").

8.    The Japanese Confirmation Order was issued prior to the December 10, 2007 deadline for entry of the Japanese Confirmation Order in the Second Amendment to the Acquisition Agreement, which was approved by this Court pursuant to an order entered on May 11, 2007. The Japanese Confirmation Order became final and non-appealable under Japanese law on January 9, 2008.

9.    The Japanese Plan set a deadline of six months from the date the Japanese Confirmation Order becomes final and non-appealable (i.e., July 9, 2008) for the Debtor to consummate the Equity Sale.

10. The Joint Plan defines Effective Date as "the first Business Day (a) on which no stay of the Confirmation Order is in effect and (b) that is at least one Business Day after the date on which the conditions specified in Section 8.1 of the Plan have been satisfied or waived." *See* Joint Plan at § 1.71. The "Conditions Precedent" set forth in Section 8 of the Joint Plan, were satisfied and the Effective Date of the Joint Plan occurred on December 7, 2007 (U.S. time), one business day after the entry of the Japanese Confirmation Order.

11. Prior to the original December 31, 2007 Closing deadline under the Acquisition Agreement, the Buyer requested more time to close the Equity Sale. Pursuant to an order entered on March 14, 2008, the Court approved the Third Amendment by and among the Plan Proponents, the Trust, Hyatt and the Buyer which, among other things, extended the Closing deadline to April 3, 2008.

12. In late March 2008, the Buyer advised the Plan Proponents and the Trust that, in view of deteriorating market conditions, it would not consummate the Equity Sale at the $445 million purchase price called for in the Acquisition Agreement. After extensive negotiations and deliberations, representatives of the Debtor's estate concluded that entering into a proposed Fourth Amendment to the Acquisition Agreement with a the modified purchase price of $410 million, was in the best interest of the Debtor's estate and that consummation of the Equity Sale on the amended terms will maximize the available recovery for unsecured creditors under the circumstances.

13.     On April 25, 2008, the Plan Proponents and the Trustee filed their Joint Motion for Approval of Fourth Amendment to Acquisition Agreement, which this Court approved on May 9, 2008. The order approving the Fourth Amendment was entered on May 13, 2008.

14.     On May 29, 2008, the Plan Proponents and the Trustee filed their Joint Expedited Motion for Approval of Forbearance Agreement with the Waikiki Entities, seeking approval of a Forbearance Agreement that, among other things calls for the Japanese Trustee to transfer to the Waikiki Entities, the Pledged CD totaling approximately $29.5 million to the Waikiki Entities and for the Waikiki Entities to forbear from exercising remedies available to them beginning July 1, 2008 under their settlement agreements with the Plan Proponents. The Court approved the Forbearance Agreement pursuant to an order entered on June 4, 2008. The Pledged CD has been transferred to the Waikiki Entities.

15.     Implementation of the Fourth Amendment required confirmation of an amended plan of reorganization for the Debtor by the TDC (the "Amended Japanese Plan") prior to June 30, 2008.

16.     On June 3, 2008, the TDC entered the TDC Amendment Order (as defined in the Fourth Amendment) approving the Amended Japanese Plan. *See* Certified Translations of Amended Japanese Plan and Amended Japanese Confirmation Order submitted on June 23, 2008. The TDC Amendment Order became final and non-appealable under Japanese law on July 2, 2008.

17.    On July 3, 2008, the Buyer gave written notice to the Debtor and the Trust of the Buyer's intent to consummate the Equity Sale within six business days after the Discharge Date, as defined in the Acquisition Agreement. On the same day, the Trustee sent a notice asking the Japanese Trustee to request that the TDC set the Discharge Date for the Debtor under the Amended Japanese Plan for July 10, 2008 (Japan time), the Domestication Transaction Date for July 14, 2008 (Hawaii time), and the Closing Date for July 16, 2008 (Hawaii time). *See* Exhibits "B" and "C" hereto.

18.    During the process of preparing for the closing, the Buyer voiced a concern that there is uncertainty as to whether the Waikiki Entities' liens would transfer to the proceeds of the Equity Sale upon Buyer's payment of the Purchase Price, and whether the Waikiki Entities could enforce their claims, including claims for fees, costs, expenses and reimbursement, if any, against the Buyer, NewCo or its assets.

19.    The Movants believe the Confirmation Order provides for (i) Buyer's acquisition of NewCo free and clear of Liens (except for Permitted Encumbrances as defined and specified in the Acquisition Agreement), (ii) the transfer of Liens on NewCo or its assets to the proceeds of the Equity Sale, and (iii) an injunction barring the Waikiki Entities from asserting claims against NewCo or its assets for any charges that the Waikiki Entities might assert under the Waikiki Notes.  Although it appears that neither the Buyer nor the Waikiki

59687

Entities seriously dispute this reading of the Confirmation Order, the Movants believe that entry of an order approving the Closing Agreement in substantially the form attached hereto will provide the parties with additional "comfort" necessary to consummate the Equity Sale on a timely basis.

## RELIEF REQUESTED AND BASIS

20. Pursuant to the Motion, the Movants seek an order approving the Closing Agreement on an *ex parte* basis. Approval of the Closing Agreement on an *ex parte* basis is appropriate as the Closing Agreement merely reaffirms the parties' understanding of the structure of the Equity Sale while reserving resolution of a current dispute between the Plan Proponents and the Waikiki Entities regarding certain additional fees and costs for another day.

## CONCLUSION

WHEREFORE, the Trustee and the Plan Proponents respectfully request that this Court: (a) approve the Closing Agreement; and (b) grant such additional relief as the Court deems necessary and appropriate.

DATED: Honolulu, Hawaii, July 11, 2008.

Respectfully submitted,

/s/ Chuck C. Choi
JAMES A. WAGNER
CHUCK C. CHOI
Attorney for Debtor and
Debtor in Possession

/s/ Jeffrey C. Krause
JEFFREY C. KRAUSE,
GEORGE C. WEBSTER II
ERIC D. WINSTON, and
H. ALEXANDER FISCH
Stutman, Treister & Glatt Professional
Corporation
Co-Counsel to the Official Committee of
Unsecured Creditors, the Azabu
Liquidating Trust Committee, and the
Azabu Liquidating Trust

/s/ Wayne K.T. Mau
WAYNE K. MAU
Watanabe, Ing & Komeiji LLP
Co-Counsel to the Official Committee of
Unsecured Creditors, the Azabu
Liquidating Trust Committee, and the
Azabu Liquidating Trust

## CLOSING AGREEMENT

This Closing Agreement (this "Agreement") is entered into as of the 11th day of July 2008, by and among Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K., chapter 11 debtor in possession ("Azabu") and its affiliates and subsidiaries (together with Azabu, the "Debtors"), the Azabu Liquidating Trust (the "Azabu Trust"), and the Official Committee of Unsecured Creditors (the "Committee"), on the one hand, and Waikiki First Finance Corp. and Waikiki S.F. LLC (together, the "Waikiki Entities"), on the other hand (each a "Party" and collectively, the "Parties"):

## RECITALS

A.    The Parties are among the parties to the "Forbearance Agreement" dated as of June 2008.  Terms not otherwise defined in this Agreement shall have the meanings set forth in the Forbearance Agreement.

B.    Pursuant to the Global Settlement Agreement, which was incorporated by reference into both the Final US Plan and the order confirming the Final US Plan, the Waikiki Entities hold claims against the Debtor (the "WE Claims") that are Allowed Secured Claims to the extent provided under the Global Settlement Agreement.  The WE Claims, proofs of which were timely filed on June 1, 2006, (Claim 25 & Claim 26), are secured by Azabu's interest in the Hotel, the proceeds generated by the Hotel, the FF&E, and Azabu's funds held in various depository accounts in Tokyo, Japan.

C.    In June 2008, Azabu transferred the proceeds of the Pledged CD to the Waikiki Entities in partial satisfaction of the WE Claims.

D.    As of July 16, 2008, there will be principal and interest due of $301,780,391.14 under the Waikiki Notes.  Interest accrues on this amount after July 16, 2008, at the per diem rate of $71,430.02.

The amounts set forth in this section D will hereinafter be referred to as the "Undisputed Amounts."

E.    The Waikiki Entities assert claims for amounts under the Waikiki Notes in addition to the Undisputed Amounts.  As of July 11, 2008, these claims are asserted to be approximately $1,787,559.05 (such amount being hereinafter referred to as the "Disputed Amount"), which includes:

   (1)    attorneys' fees and costs $680,680.46;

   (2)    fees, costs, expenses and reimbursements (including insurance premiums) $116,961.25;

   (3)    additional damages allegedly due (including LIBOR Breakage Charges) $989,917.34; and

1

**EXHIBIT A**

(4)    interest at the current rate under the Waikiki Notes (3 Month LIBOR plus 5.75%) on any portion of the Disputed Amounts ultimately determined to be due.

F.    The Debtors, the Azabu Trust, and the Buyer expect to close the sale pursuant to the Acquisition Agreement on July 16, 2008 (the "Closing"). This Agreement, which does not modify the Plan Settlement Agreement, the Global Settlement Agreement, the Forbearance Agreement, the orders approving such agreements, the Final US Plan or the order confirming the Final US Plan, is in furtherance of the Closing and the implementation of the Plan Settlement Agreement, the Global Settlement Agreement, the Forbearance Agreement, and the Final US Plan.

## AGREEMENT

1.    Payment of Undisputed Amounts From Proceeds Of Sale.

If and when the Closing under the Acquisition Agreement occurs, payment to the Waikiki Entities of the Undisputed Amounts will be made pursuant to the following wire instructions:

Wire funds to Waikiki First Finance Corp. as follows:

> Bank: First Hawaiian Bank
> 999 Bishop Street
> Honolulu, HI 96813
> Account name: Waikiki First Finance Corporation
> **Account number: #01-192582**
> ABA #121301015
> Attn: Denise Kimura, Main Banking Center (808) 525-8843

Wire funds to Waikiki S.F. LLC as follows:

> Bank: First Hawaiian Bank
> 999 Bishop Street
> Honolulu, HI 96813
> Account name: Waikiki SF Corp.
> **Account number: #01-192590**
> ABA #121301015
> Attn: Denise Kimura, Main Banking Center (808) 525-8843

2.    Reserve For Disputed Amounts.

By separate Escrow Instructions, the escrow holder will segregate four times (4.0x) the Disputed Amount ($7,150.236.20) as a reserve (the "WE Reserve"), which all Parties hereto expressly acknowledge shall be: (i) subject to the Waikiki Entities' first priority liens as against proceeds or otherwise, which liens shall be valid, perfected, enforceable, and non-avoidable, and the Bankruptcy Court order approving this Agreement shall be sufficient and conclusive evidence of the first priority,

2

perfection, and validity of the Waikiki Entities' liens on the WE Reserve (without the necessity of filing, recording, or serving any financing statements, mortgages, or other notices which may otherwise be required under federal or state law or taking possession of or taking any other action to validate or perfect the Waikiki Entities' liens on the WE Reserve), to the greatest extent allowed under the Global Settlement Agreement, the Final US Plan, the order confirming the Final US Plan, and applicable law in order to secure payment of the Disputed Amounts, subject to all defenses that currently exist to the claims for the Disputed Amounts; and (ii) disbursed only upon: (a) joint written instructions by the Azabu Trust and the Waikiki Entities; or (b) as directed by a final order of the Bankruptcy Court (which order shall be sought by motion). The WE Reserve shall constitute the only collateral (but not the only recovery rights, which are expressly reserved against the Azabu Trust in paragraph 3 below) for the rights, claims, and interests of the Waikiki Entities under or relating to the Waikiki Notes, or any other of the WE Claims. The Parties reserve their rights to assert/contest all of the claims for the Disputed Amounts and neither this Agreement nor the establishment of the WE Reserve shall constitute an admission or acknowledgement by a Party that the claims for the Disputed Amounts are either valid or invalid claims. The Waikiki Entities and the Azabu Trust reserve their respective rights to seek any attorneys' fees and costs incurred in litigating the merits of the claims for the Disputed Amounts as provided under the Waikiki Notes and applicable law, and such rights to seek such attorneys' fees and costs shall not be altered, limited, or enhanced by this Agreement.

3.    Release of Collateral.

Upon the occurrence of the following: (i) payment of the Undisputed Amounts to the Waikiki Entities; and (ii) the establishment of the WE Reserve as provided herein and in the Escrow Instructions, all rights, claims, liens, and interests of the Waikiki Entities in the Hotel or any other assets retained by NewCo after the equity in NewCo is acquired by the Buyer through the Acquisition Agreement, as amended, shall be transferred to the WE Reserve. The Hotel and all other assets retained by NewCo will be free and clear of any such rights, claims, liens, and interests. The Waikiki Entities shall have recourse against the Azabu Trust for the Disputed Amounts, subject to all existing defenses to the Disputed Amounts, and shall have no recourse related to the WE Claims to the Buyer, Newco, or the Debtors. If the Waikiki Entities are successful in asserting their claims for the Disputed Amounts (either through settlement or Bankruptcy Court order) and such claims exceed the WE Reserve, such claims against the Azabu Trust shall be paid by the Azabu Trust.

4.    Voluntary Settlement. The Parties to this Agreement acknowledge and agree that each of them is entering into this Agreement freely and voluntarily and not acting under any misapprehension as to the effect hereof, and has acted and does hereby act freely and voluntarily and not under any coercion or duress.

5.    No Mistake of Fact or Law. In entering into this Agreement, each Party recognizes that no facts or representations are ever absolutely certain. Accordingly, each Party assumes the risk of any mistake, and if it should subsequently

discover that any understanding of the facts or of the law was incorrect, each Party understands and expressly agrees that it shall not be entitled to set aside this Agreement by reason thereof, regardless of any mistake of fact or law.

6. Mutual Representations and Warranties.

The Parties hereby represent and warrant to each other the following, each of which is a continuing representation and warranty:

(a) Each of the Parties hereto is the sole and lawful owner of all right, title and interest in and to every asserted claim herein. None of the Parties have assigned or transferred, or purported to assign or transfer, to any person or entity any claims discussed herein. The Parties shall indemnify, defend, and hold each other harmless from and against any claims, liabilities, actions, causes of action, demands, injuries, damages, costs, and expenses (including, but not limited to, reasonable attorneys' fees), based upon or arising in connection with any such prior assignment or transfer, or any such purported assignment or transfer, with respect to any claims discussed herein.

(b) This Agreement is a valid and binding obligation of the Parties, enforceable against each of them in accordance with its terms.

(c) Except as otherwise expressly provided in this Agreement, no consent or approval is required by any other person or entity in order for the Parties to carry out the provisions of this Agreement, and each of the Parties has obtained all necessary corporate and other approval to enter into and perform the obligations under this Agreement. In addition, each person signing this Agreement warrants that he or she is legally competent and authorized to execute this Agreement on behalf of the Party whose name is subscribed at or above such person's signature.

(d) Each of the Parties hereto has received independent legal advice from attorneys of its choice with respect to the advisability of making the agreements provided herein and with respect to the advisability of executing this Agreement, and prior to the execution of this Agreement by the Parties hereto, their attorneys reviewed this Agreement with them and have made all desired changes.

(e) Except as otherwise expressly stated in this Agreement the Parties have not made any statement or representation to each other regarding any facts relied upon by them in entering into this Agreement, and each of them specifically does not rely upon any statement, representation, or promise of the other party hereto or any other person in entering into this Agreement, except as expressly stated in this Agreement. Each Party has relied upon its own investigation and analysis of the facts and not on any statement or representation made by any other party in choosing to enter into this Agreement and the transactions contemplated herein.

4

(f)     The Parties hereto and their respective attorneys have made such investigation of the facts pertaining to this Agreement and all of the matters pertaining thereto, as they deem necessary.

7.     <u>No Admission Against Interest</u>.  Nothing contained in this Agreement or negotiations and communications leading up to it shall be construed as admissions against the interest of any of the Parties hereto.  Except to enforce this Agreement, the terms of this Agreement, including, without limitation, the recitals and representations made by any Party shall have no force or effect and will not be binding upon, enforceable against, or deemed an admission or acknowledgment of any fact by any Party.  This Agreement shall not be admissible as evidence in any action or proceeding except to enforce this Agreement or to carry out the actions contemplated herein.

8.     <u>Binding Upon Execution/Bankruptcy Court Approval/Effective Date/Best Efforts</u>.  This Agreement will become binding and permanent upon execution by the Parties; however, the Effective Date of this Agreement shall occur upon the following: (i) the Bankruptcy Court enters an order approving this Agreement and authorizing the Waikiki Entities' perfected first priority liens in the WE Reserve; (ii) payment of the Undisputed Amounts to the Waikiki Entities; and (iii) the establishment of the WE Reserve as provided herein and in the Escrow Instructions, in compliance with Paragraphs 1 and 3 above.  The Parties shall use their best efforts to achieve and accomplish the terms of this Agreement.  If the Effective Date of this Agreement does not occur prior to July 25, 2008, this Agreement and all of its terms and provisions shall be null, void, and of no force or effect.

9.     <u>Miscellaneous</u>.

(a)     Except as provided herein, all covenants, warranties, representations, and indemnities made by the Parties to one another pursuant to this Agreement shall be and remain in full force and effect upon this Agreement becoming effective.

(b)     The Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be appropriate or reasonably necessary, from time to time, to effectuate the agreements and understandings of the Parties, whether the same occur before or after the date of this Agreement.

(c)     This Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Parties hereto.

(d)     The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

5

(e)     To the extent that performance is to be governed by time, time shall be deemed to be of the essence hereof.

(f)     This Agreement is to be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and where state law is implicated, the laws of the State of Hawaii shall govern. The U.S. Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Agreement.

(g)     This Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same Agreement. This Agreement may also be executed by facsimile or electronic signature followed by delivery of the original executed Agreement.

(h)     This Agreement is the product of negotiations of the Parties, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.

(i)     In the event that any party to this Agreement takes any action or utilizes any legal means to interpret or enforce this Agreement, or any of its terms, and any Party incurs costs (including attorneys' fees) as a result thereof, the prevailing Party in such dispute shall be entitled, in addition to any judgment or award, to an award for all costs incurred (including reasonable attorneys' fees). The prevailing Party shall further be entitled to an award of reasonable attorneys' fees and related costs in connection with any appeal commenced or defended.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

6

475992v1

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**WAIKIKI FIRST FINANCE CORP.**

BY: **HR WAIKIKI NOTE INVESTORS, LLC**

BY: **TRINITY INVESTMENTS, LLC**

By:_____
Name:  Jon Miho
Title:  Principal

**WAIKIKI S.F. LLC**

BY: **HR WAIKIKI NOTE INVESTORS, LLC**

BY: **TRINITY INVESTMENTS, LLC**

By:_____
Name:  Jon Miho
Title:  Principal

**AZABU U.S.A., INC.,**

By:_____
Name:
Title:

**AZABU NEWCO, INC.,**

By:_____
Name:
Title:

**AZABU FF&E SUBSIDIARY, INC.,**

By:_____
Name:
Title:

**AZABU LIQUIDATING TRUST**

By:_____
Name:
Title:

7

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____

    Name:

    Title:

**Approved As To Form & Content:**

Counsel For the Debtors

By _____

    Chuck C. Choi

Counsel For The
OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By _____

    George C. Webster II

Counsel For
WAIKIKI FIRST FINANCE CORP. & WAIKIKI S.F. LLC.

By _____

    Oscar Garza

8

July 3, 2008

*VIA FACSIMILE*

Steven G. Varner
Managing Director
Alvarez & Marsal, LLC
633 West Fifth Street, Suite 2560
Los Angeles, CA 90071

      Re:   Azabu Liquidating Trust:  Notice by Buyer Pursuant to Section 7.2(o) of
             Acquisition Agreement

Dear Mr. Varner:

           Pursuant to Section 7.2(o) of the Acquisition Agreement, as amended, W2007
Waikiki Holdings, LLC, a Delaware limited liability company ("Buyer"), as successor to Hyatt
Corporation, hereby notifies the Azabu Liquidating Trust and Azabu Buildings Company, Ltd.
that the Buyer is prepared to close and intends to close within six (6) business days after the
Discharge Date, as defined in the Acquisition Agreement, as amended.

           Very truly yours,

           W2007 WAIKIKI HOLDINGS, L.L.C., a Delaware
           limited liability company

           By:   Whitehall Parallel Global Real Estate Limited
                 Partnership 2007, a Delaware limited
                 partnership, its managing member

               By: _____
               Name:
               Title:    **LACXON CHAN**
                         **VICE PRESIDENT**

cc:    Stephen G. Tomlinson, Esq.
       Anthony Colletta, Esq.
       Anup Sathy, Esq.
       Gary E. Axelrod, Esq.
       James Wagner, Esq.
       George C. Webster II, Esq.
       Jeffrey C. Krause, Esq.

**EXHIBIT  B**

AZABU LIQUIDATING TRUST
C/O
Alvarez & Marsal North America, LLC,
Trustee, Azabu Liquidating Trust
633 West Fifth Street
Suite 2650 Los Angeles, CA 90071

July 3, 2008

**VIA EMAIL**

Eiji Katayama, Esq., Trustee
Azabu Building Company, Ltd.

Dear Mr. Katayama:

We are pleased to advise the Trustee that certain conditions to closing the Acquisition Agreement with W2007 Waikiki Holdings, Ltd. have been met by the Debtor and we believe that the transaction is set to close on July 16, 2008. Pursuant to the terms of the Japanese Reorganization Plan, please set the following dates:

1.   Set the Discharge Date for July 10, 2008, Japan time;

2.   Set the Domestication Transaction Date for July 14, 2008, HST; and

3.   Set the Assignee Acquisition Date under the Japanese Reorganization Plan (the "Closing Date" under the Acquisition Agreement) for July 16, 2008, HST.

Thank you for your continued cooperation and assistance in this matter.

AZABU LIQUIDATING TRUST

By: Alvarez & Marsal North America, LLC,
    A Delaware limited liability company, as
    Trustee of the Azabu Liquidating
    Trustee

By: _____
        Steven Varner, Managing Director

475769v1

**EXHIBIT C**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

In re

AZABU BUILDINGS
COMPANY LTD., aka AZABU
TATEMONO K.K.,

        Debtor and
        Debtor-in-possession

Case No. 05-50011
(Chapter 11)

## DECLARATION OF CHUCK C. CHOI IN SUPPORT OF EMERGENCY EX PARTE MOTION BY PLAN PROPONENTS AND AZABU LIQUIDATING TRUSTEE FOR APPROVAL OF CLOSING AGREEMENT WITH WAIKIKI ENTITIES

I, Chuck C. Choi, hereby declare that, if called as a witness in this action, I could and would testify competently of my own personal knowledge as follows:

1.    I am an attorney licensed to practice before this Court and a partner at Wagner Choi & Verbrugge, bankruptcy counsel for Azabu Buildings Co., Ltd., debtor and debtor-in-possession herein (the "Debtor"). I make this declaration in support of the Emergency Ex Parte Motion by Plan Proponents and Azabu Liquidating Trustee for Approval of Closing Agreement With Waikiki Entities (the "Motion"). Terms used herein and not otherwise defined have the meaning given to them in the Motion.

2.    I have reviewed the Motion and the factual assertions regarding the Joint Plan, the status of the Debtor's Chapter 11 Case, the Japanese Case, and

59687

the Equity Sale are true and correct.

3.     Attached as Exhibit "A" to the Motion is a true and correct copy of the proposed Closing Agreement.

4.     Attached as Exhibits "B" and "C" to the Motion are true and correct copy of the notices regarding the Closing sent by the Buyer and the Trustee, respectively, on July 3, 2008. The Closing is scheduled to occur on July 16, 2008, Hawaii time.

I declare under penalty of perjury, that the foregoing is true and correct.

Dated: Honolulu, Hawaii, July 11, 2008.

/s/ Chuck C. Choi
CHUCK C. CHOI