WAGNER CHOI & VERBRUGGE
Attorneys at Law
JAMES A. WAGNER
CHUCK C. CHOI
NEIL J. VERBRUGGE
Topa Financial Center, Fort St. Twr.
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: wcelaw@wcelaw.com

STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
JEFFREY C. KRAUSE          CA 94053
H. ALEXANDER FISCH         CA 223211
LAUREN N. GANS             CA 247542
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone No.       (310) 228-5600
Telefacsimile No.  (310) 228-5788
jkrause@stutman.com, afisch@stutman.com, lgans@stutman.com

WATANABE ING, LLP
WAYNE K. MAU
First Hawaiian Center, Suite 2300
999 Bishop Street
Honolulu, Hawaii   96813
Telephone No.       (808) 544-8300
Telefacsimile No.  (808) 544-8399
wmau@wik.com

Attorneys for The AZABU Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) Case No. 05-50011 (RJF) |
| | ) |
| | ) (Chapter 11) |
| AZABU BUILDINGS COMPANY | ) |
| LTD., aka AZABU TATEMONO | ) |
| K.K. | ) |
| | ) <u>Status Conference:</u> |
| Debtor. | ) |
| | ) DATE: January 20, 2009 |
| | ) TIME: 9:30 am |
| | ) JUDGE: Honorable Robert J. Faris |
| | ) |

## OBJECTION OF THE AZABU LIQUIDATING TRUST TO CLAIM NO. 34 AND JLQ'S JAPANESE CASE PROOF OF CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

The AZABU Liquidating Trust (the "Trust"), by Alvarez & Marsal North America, LLC, as Trustee of the Trust (the "Trustee"), hereby files this Objection Of The AZABU Liquidating Trust To Claim No. 34 And JLQ's Japanese Case Proof Of Claim (the "Objection") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Objection,[1] the Trust respectfully represents as follows:

---

[1] To comply strictly with Bankruptcy Rule 3007, the Trust has filed separate objections to the claims asserted by JLQ, LLC; MDL Seven Co. Ltd.; MDL Two Co. Ltd.; and JTGLQ Company (the "GS Claimants"), although the GS Claimants are affiliated, and the claims suffer from largely overlapping infirmities and share many common background facts. The arguments that (a) yen denominated claims must be converted to U.S. dollars at the rate of 118.23 yen per dollar, and (b) only one claim may be allowed on account of the claims filed in this case and the Debtor's case in Japan are substantially the same in each objection. The essence of each objection can be determined by referring to Section IV.H., the relevant discussion in Section V., and Exhibit "A," which provides a summary of the respective Objection.

# I.    JURISDICTION

This Court has jurisdiction over the subject matter of this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  The instant proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court possesses the requisite authority to grant the relief requested herein pursuant to sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007.

# II.    STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 44.1

The Trust raises issues concerning the law of a foreign country in this Objection.  The Court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The Court's determination shall be treated as a ruling on a question of law.

# III.    RELIEF REQUESTED

By this Objection, the Trust, pursuant to Bankruptcy Code section 502(b) and Bankruptcy Rule 3007, hereby objects to the claim asserted by JLQ, LLC ("JLQ") in proof of claim number 34 as reflected in the Court's registry of claims ("Claim No. 34") and the proof of claim filed by JLQ in the Japanese Case[2] (the "JLQ Japanese Claim") and requests that the Court enter an order disallowing, expunging, and/or reducing Claim No. 34 and the JLQ Japanese Claim, as set forth herein.

---

[2]    The Japanese Case is that case concerning Azabu Buildings Company, Ltd., filed in the Tokyo District Court on June 25, 2007, as described and defined in the "Order Confirming Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Company, Ltd., a.k.a. Azabu Tatemono K.K. and Subsequent Filing Entities as of April 23, 2007" (the "Confirmation Order").  Capitalized terms not otherwise defined herein shall have the meaning set forth in the Confirmation Order.

# IV.    BACKGROUND

## A.    The Chapter 11 Filing.

This case was commenced under chapter 11 of the Bankruptcy Code by the filing of an involuntary petition against the Debtor on November 10, 2005 pursuant to section 303 of the Bankruptcy Code.  On February 1, 2006, the Debtor consented to the entry of an order for relief under chapter 11, and an order for relief was entered.  The Debtor continues to operate its business as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

## B.    The Confirmed Plan of Reorganization and the Creation of the AZABU Liquidating Trust.

Pursuant to the Confirmation Order entered June 28, 2007, "all Estate Causes of Action shall be AZABU Trust Assets and the Liquidating Trustee . . . shall have the full power and authority to prosecute, compromise or otherwise resolve any and all such Estate Causes of Action, with all recoveries derived therefrom to be AZABU Trust Assets[,]" Confirmation Order, ¶ 49, and "the Liquidating Trustee, as the Estate Representative, shall have authority to investigate, administer, monitor, implement, litigate and settle all Disputed or unresolved Claims . . . ."  *Id.* at ¶ 50.

The First Confirmation Implementation Date occurred on July 10, 2007.  On the First Confirmation Implementation Date, pursuant to the Confirmation Order and Section 5.7 of the Plan, the Trust was formed.  On that date, the Trust engaged Alvarez & Marsal North America, LLC to serve as the Trustee.  Also on the First Confirmation Implementation Date pursuant to the Confirmation Order and Plan, the Trustee executed the AZABU Liquidating Trust Agreement and the Debtor commenced transferring the Excluded Assets to the Trust.  Pursuant to the Confirmation Order, Plan and AZABU Liquidating Trust Agreement, the Official Committee of Unsecured Creditors continues to serve as the AZABU Liquidating Trust Committee.

## C.  The Commencement of the Japanese Case.

Pursuant to this Court's oral ruling at the Confirmation Hearing, and consistent with paragraph 21 of the Confirmation Order, the Debtor filed the Japanese Case on June 25, 2007.  An order formally commencing the Japanese Case (the "Commencement Order") was entered by the Tokyo District Court on August 1, 2007, and Mr. Eiji Katayama was appointed as trustee in the Japanese Case.

## D.  Claims Filed In The U.S. Case.

Shortly after the entry of an order for relief, the Debtor filed its "Summary of Schedules and Statement of Financial Affairs" (the "Schedules") pursuant to Bankruptcy Code section 521(1), based upon its books and records as of the Petition Date.  The Schedules list fifty-one non-priority unsecured claims against the Debtor, forty-seven of which were listed as disputed.  The Debtor later amended its Schedules to add fourteen non-priority unsecured claims, each of which was listed as disputed.

On February 2, 2006, the Clerk of the Court entered the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines[,]" which set June 4, 2006 (the "Bar Date") as the deadline for creditors other than governmental units to file proofs of claim in this case.  Parties in interest filed forty proofs of claim against the Debtor, not including amendments and superseding proofs of claim.  Pursuant to this Court's "Order Granting Debtor's Motion for Order Setting Supplemental Bar Date[,]" the Bar Date for those certain creditors who were added to the Debtor's schedules was extended to August 7, 2006.

## E.  Claims Filed in the Japanese Case.

To facilitate coordination of the Chapter 11 Case and the Japanese Case, the Confirmation Order provides, in pertinent part, as follows:

Notwithstanding any bar date set by the Bankruptcy

Court to the contrary, all Japanese Case Claims shall be deemed to be timely Filed in the Chapter 11 Case and the holders thereof shall receive treatment on account of such Claims, to the extent they are or become Allowed Claims, in accordance with the provisions of the Plan.

Confirmation Order, ¶ 24.  The Plan similarly provides as follows:

Notwithstanding any bar date set by the Bankruptcy Court to the contrary, all timely Filed Japanese Case Claims shall be deemed to be timely filed in the Chapter 11 Case and the holders thereof shall receive treatment on account of such Claim, to the extent they are Allowed Claims, in accordance with the provisions of the Plan. All Claims timely Filed in the Japanese Case will be allowed or disallowed and treated under the Plan as if timely Filed in the Chapter 11 Case.

Plan, Section 5.4.4.

Pursuant to the Commencement Order, the last date to file claims in the Japanese Case was September 3, 2007 (the "Japanese Case Bar Date").  Prior to the Japanese Case Bar Date, Mr. Eiji Katayama, the trustee appointed in the Japanese Case, informed the Debtor and the Trust that only claims actually filed in the Japanese Case would be entitled to vote on the Japanese Plan.  The Debtor agreed to file claims in the Japanese Case on behalf of creditors who filed proofs of claim in the Chapter 11 Case, but had not filed proofs of claim in the Japanese Case.  Thirty-six claims were filed in the Japanese Case, both by creditors and by the Debtor on behalf of creditors, including two claims that had not been previously filed in the Chapter 11 Case.  Several of the proofs of claim filed in the Japanese Case include late charges that accrued after the Chapter 11 Case Petition Date.

**F.    Stipulations Regarding Tolling of the Deadline to Object to Claims Asserted and the Current Claim Objection**

JLQ, LLC; MDL Seven Co. Ltd.; MDL Two Co. Ltd.; and JTGLQ

Company (the "GS Claimants"), on the one hand, and the Committee and the Trustee on the other hand, entered into the "Iizuka Stipulation" which provided that (1) as a part of the investigation into the merits of the GS Claimants' claims, including JLQ's claims, and the potential statute of limitations defenses with respect to some or all of the GS Claimants' claims, the Committee and the Liquidating Trustee would schedule the deposition of Mr. Minoru Iizuka before a final decision would be made as to whether to object to the claims; and (2) objections to claims filed prior to June 15, 2008 would be treated as if such objections were timely filed.

A series of five stipulations[3] extended the deadline to object to the GS claimants' claims until December 5, 2008. Pursuant to the stipulations, Mr Iizuka was deposed on April 23, 2008 and the Committee and Liquidating Trustee have since analyzed Mr. Iizuka's testimony and applicable Japanese law. While JLQ

---

[3] (Joint Mot. by Plan Proponents and Azabu Liquidating Trustee for Approval of Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants Ex. A ("Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants").) [Docket No. 1929]; (Joint Mot. by Plan Proponents and Azabu Liquidating Trustee for Approval of (Second) Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants Ex. A ("Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants").) [Docket No. 1944]; (Joint Mot. by Plan Proponents and Azabu Liquidating Trustee for Approval of (Third) Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants Ex. A ("Third Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants").) [Docket No. 1954]; (Joint Mot. by Plan Proponents and Azabu Liquidating Trustee for Approval of (Fourth) Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants Ex A ("Fourth Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants").) [Docket No. 1972]; (Joint Mot. by Plan Proponents and Azabu Liquidating Trustee for Approval of (Fifth) Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants Ex A ("Fifth Stipulation Regarding Tolling of Deadline to Object to Claims Asserted by GS Claimants").) [Docket No. 1996].

contends that Mr. Iizuka gave an oral acknowledgement of Azabu's debt, the Trust maintains that as a matter of Japanese law, Mr. Iizuka's testimony, even if wholly accepted, fails to evidence an acknowledgment that would interrupt the applicable statute of limitations. The Trust further contends that Mr. Iizuka's testimony lacks reliability sufficient to prove that Azabu acknowledged JLQ's claims. Because no settlement has been reached and resolution of the dispute between the Trust and the GS Claimants, including JLQ, is in all parties' interest, the Trust has filed this claim objection to finally resolve this matter.

### G. The Trust's Investigation.

Over the course of this case, the U.S. and Japan counsel for the estate have investigated the claims asserted against the Debtor.[4] This investigation by U.S. and Japanese counsel has included reviewing the Debtor's books and records, the proofs of claim submitted in the Chapter 11 Case and the Japanese Case, the documents submitted in connection with the proofs of claim. The Trust's Japanese counsel also solicited creditors to provide additional information in support of their claims. The Trust's U.S. counsel presented the same request to U.S. counsel who had appeared or filed proofs of claim on behalf of creditors. The Trust's counsel reviewed all materials provided by creditors in response to such requests, and, in many cases, followed up with creditors to request additional, specific documentation in support of such creditors' claims. This process included analyzing Mr. Iizuka's deposition testimony.

---

[4]    Prior to the confirmation of the Plan, Japan and U.S. counsel for the Debtor, Wagner, Choi, and Evers, Attorneys at Law and Bingham McCutchen Murase, Sakai Mimura Aizawa, Foreign Law Joint Enterprise, as well as Japanese and U.S. counsel for the Committee and now the Trust, Stutman, Treister & Glatt Professional Corporation and Kajitani Law Offices, have investigated the bona fides of claims under both Japanese and U.S. law, as well as attempted to coordinate the claims resolution procedure in the Chapter 11 Case and the Japanese Case.

### H. Analysis of Claim No. 34.

Based upon the investigation described above, the Debtor's and the Trust's review of the Debtor's books and records, the proof of claim for Claim No. 34 and related JLQ Japanese Claim, supporting documents filed in both Chapter 11 Case and the Japanese Case, and additional documents submitted by creditors, as applicable, the Trust submits as follows:

- As summarized in the attached Exhibit "A" hereto, all of the Subclaims comprising Claim No. 34 are subject to the Debtor's right to invoke a statute of limitations defense under applicable law.

- In Claim No. 34, JLQ converted its Japanese Yen denominated claim against the Debtor into dollars using an exchange rate other than that prevailing on the Petition Date. Bankruptcy Code section 502(b) requires that any allowed claim on account of Claim No. 34 be converted into U.S. currency based upon the prevailing yen to dollar exchange rate on the petition date of 118.23.[5]

- JLQ filed a proof of claim in the Japanese Case on account of the same debt asserted in Claim No. 34. The only difference between Claim No. 34, as filed in the Chapter 11 Case, and JLQ's proof of claim as filed in the Japanese Case is the inclusion of late charges totaling JPY 6,580,857,569, relating to Subclaims 1-14 and 17-21, that accrued after the Chapter 11 Case Petition Date and must be disallowed under Bankruptcy Code section 502.

---

[5] All claims allowed so far in this case have been converted applying an exchange rate of 118.23. The Trust is informed that the Debtor used a yen to dollar conversion rate of 117.57 as of the Petition Date in preparing the Schedules.

# V. ARGUMENT

Bankruptcy Code section 502 authorizes a party in interest to object to claims. See 11 U.S.C. § 502. As set forth above, the Trustee has authority to prosecute objections to claims on behalf of the Trust. Upon an objection, this Court, "after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition . . . ." 11 U.S.C. § 502(b). Although a proper proof of claim is presumed valid under Bankruptcy Rule 3001(f), once an objection controverts the presumption, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim. Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000); see also Murgillo v. California State Bd. of Equalization (In re Murgillo), 176 B.R. 524, 529 (B.A.P. 9th Cir. 1995) ("The ultimate burden of persuasion is on the claimant.").

Section 502(b) provides a number of grounds on which a proof of claim may be disallowed. For the reasons set forth below, valid objections exist with respect to Claim No. 34.

## A. Claimant Has Failed to Satisfy Its Burden of Proof That the Claim Is Valid.

Bankruptcy Rule 3001(c) provides, in pertinent part that, "[w]hen a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Fed. R. Bank. P. 3001(c). Moreover, Bankruptcy Rule 3001(a) provides, in pertinent part, that "[a] proof of claim shall conform substantially to the appropriate Official Form," Fed. R. Bank. P. 3001(a), which Official Form in turn requires claimants to "[a]ttach copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of these documents." Official Bankruptcy Forms, Form 10, Item 9. A proof of claim that does not comply with Rule 3001(c)

"is not entitled to be considered as *prima facie* evidence of the claim's validity." Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.), 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995), aff'd, 91 F.3d 151 (9th Cir. 1996); accord, e.g., In re Immerfall, 216 B.R. 269, 272 (Bankr. D. Minn. 1998).

The Bankruptcy Appellate Panel for the Ninth Circuit explained a claimant's burden to present facts to support its claim as follows:

> [T]he claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. . . . The burden of persuasion is always on the claimant.

In re Consolidated Pioneer Mortg., 178 B.R. at 226 (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted)). Following this decision, the District Court for the Northern District of California emphasized, "unless the claimant has alleged 'facts sufficient to support a legal liability,' the claim is not prima facie valid." In re Hongnisto, 293 B.R. 45, 50 (N.D. Cal. 2003) (quoting In re Consolidated Pioneer Mortg.), 178 B.R. at 226) (holding that the claimant's proof of claim failed to allege sufficient facts to support a legal liability and consequently disallowed the proof of claim). See also In re Consolidated Pioneer Mortg., 178 B.R. at 227 (disallowing the claim because the proof of claim did not allege sufficient facts to support it).

As discussed below, it is the Trust's position that JLQ has failed to provide evidence that its claim is valid and enforceable under applicable law or asserted in the appropriate amount.

**1. Claim No. 34 Is Unenforceable Against the Debtor Because It Is Barred by the Applicable Statute of Limitations.**

Pursuant to section 502(b)(1), claims that are "unenforceable against the debtor and property of the debtor, under . . . applicable law for a reason other than because such claim is contingent or unmatured" must be disallowed. To determine what law governs the obligations of the Debtor with respect to Claim No. 34, this Court must apply Hawaii law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020 (1941). Absent a choice of law selection by parties to a contract, Hawaii applies the law of the jurisdiction with the most significant relationship to the parties and the subject matter. See Mikelson v. United Servs. Auto. Ass'n, 107 Haw. 192 (Haw. 2005) (Hawaii courts have "moved away from the traditional and rigid conflict-of-laws rules in favor of the modern trend towards a more flexible approach looking to the state with the most significant relationship to the parties and subject matter.") (quoting Lewis v. Lewis, 69 Haw. 497, 499, 748 P.2d 1362, 1365 (1988)).

The Debtor is a Kabushiki Kaisha (a Japanese stock company) formed pursuant to the laws of Japan. On information and belief, Mitsubishi Trust & Banking, Toyo Trust & Banking, Toyo Mortgage Service and TG Service, the original obligees with respect to Claim 34, are Japanese entities and/or conduct a substantial portion of their business in Japan. Claim No. 34 consists entirely of obligations entered into in Japan and to be performed in Japan. Accordingly, Japanese law is the relevant non-bankruptcy law governing the obligations of the Debtor with respect to Claim No. 34. See Restat. 2d of Conflict of Laws, § 188 (instructing that determining what jurisdiction has the most significant contacts requires consideration of the following factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location

of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.").

Under applicable Japanese law, a commercial obligation is subject to a five year statute of limitations.  If no event has occurred to interrupt the statute of limitations, enforcement of the obligation is subject to the debtor's right to invoke the statute of limitations.  Commercial Code of Japan, Art. 522 ("[A] claim which has arisen out of a commercial transaction shall be extinguished by prescription if it is not exercised within five years."); <u>see</u> Bankruptcy Code § 558 ("The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses.  A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.").

All of the Subclaims comprising Claim No. 34 are subject to the Debtor's right to invoke a statute of limitations defense under applicable law.  Exhibit "A" hereto contains a summary of the Trust's conclusions, including the relevant dates when the statute of limitations expired for each of the Subclaims comprising Claim No. 34 as appears from the face of JLQ's proof of claim.  The documents attached to JLQ's proof of claim filed in the Chapter 11 Case do not establish that any event has interrupted the statute of limitations with respect to any of the Subclaims comprising Claim No. 34.  It is the Trust's position that the Debtor's books and records, Mr. Iizuka's testimony and the written evidence submitted by JLQ to the Trust do not demonstrate that the Debtor has acknowledged, or waived the statute of limitations with respect to Claim No. 34.  Accordingly, Claim No. 34 should be disallowed in its entirety.

**2.      Claim No. 34 Is Inconsistent with the Debtor's Books and Records.**

As discussed above, Claim No. 34 includes JPY 6,580,857,569 in late charges that accrued during the period from the Petition Date in the Chapter 11 Case through the date of the Commencement Order.  Postpetition interest and late charges are not properly recoverable by JLQ, an unsecured creditor.  See In re Cal. Wholesale Elec. Co., 121 B.R, 360, 366-67 (Bankr. C.D. Cal. 1990); see also In re Gledhill, 164 F.3d 1338, 1340 (10th Cir. 1999); In re Brentwood Outpatient, Ltd., 43 F.3d 256, 262 (6th Cir. 1994) ("[Section] 506(b) . . . sets out the only exceptions to the general rule disallowing post-petition" additions to a prepetition claim); In re Pointer, 952 F.2d 82, 89 (5th Cir. 1992)("[O]nly creditors who have voluntary secured claims can recover penalties . . . .").  Accordingly, the Trust respectfully requests that this Court disallow, at a minimum, JPY 6,580,857,569 of Claim No. 34, which is attributable to postpetition late charges.

**3.      Claim No. 34 Must Be Disallowed to the Extent that Debts Denominated in Japanese Yen Have Been Converted to U.S. Dollars at a Rate Other Than That Prevailing on the Petition Date.**

The plain language of Bankruptcy Code section 502(b) requires that the amount of debts denominated in foreign currency shall be determined "in lawful currency of the United States as of the date of the filing of the petition . . . ."  See also In re Aaura, Inc., Case No. 06 B 01853, 2006 Bankr. LEXIS 2011, at *15 n.5 (Bankr. N.D. Ill. Sept. 1, 2006) ("Section 502(b) prevents the value of a claim from fluctuating by freezing the claim *as of the petition date and converting it to United States dollars*.  The amount of the claim will not change, even if the goods under contract subsequently rise or fall in value, or if the applicable currency rises or falls in relation to dollars."); In re Interco Inc., Case No. 91-40442-172, 1992 Bankr. LEXIS 1872, at *42 (Bankr. E.D. Mo. Nov. 19, 1992) (ordering that proofs

of claim be filed in US dollars, converted using the applicable rate on the petition date).

In light of the mandate of section 502(b), the Trust respectfully requests that any allowed claim on account of Claim No. 34 be determined as of the Petition Date in the Chapter 11 Case, using the exchange rate of $1 to JPY 118.23, as published in the Wall Street Journal. See What's News, Wall St. J., Nov. 11, 2005, Bus. & Fin., at A1; E.S. Browning, Thursday's Markets, Wall St. J., Nov. 11, 2005, at C1.

Any allowed claim on account of Claim No. 34 should be allowed only in United States dollars in an amount calculated using the applicable yen to dollar exchange rate of 118.23. Every claim allowed so far in the Debtor's case has been converted to dollars applying this exchange rate. In light of the unenforceability of all Subclaims comprising Claim No. 34, the Trust submits that Claim No. 34 should be disallowed in its entirety, however if an amount is allowed it must be converted to U.S. dollars at the applicable yen to dollar conversion rate of 118.23.

**B.      Claim No. 34 and the JLQ Japanese Claim Are Duplicative.**

As set forth above, pursuant to Paragraph 24 of the Confirmation Order and Section 5.4.4 of the Plan, claims timely filed in the Japanese Case are deemed timely filed in the Chapter 11 Case for purposes of distribution and claims objections. As a result of such duplication of claims, the Trust objects to both Claim No. 34 and the corresponding JLQ Japanese Claim.

Section 502 precludes the allowance of duplicative proofs of claim because applicable law prevents a claimant from recovering twice on a single debt. See Fine Organics Corp. v. Hexcel Corp. (In re Hexcel Corp.), 174 B.R. 807, 811 (Bankr. N.D. Cal. 1994) (noting the bankruptcy policy "intended to protect the limited assets of the estate from duplicative claims"); In re Finley, Kumble,

<u>Wagner, Heine, Underberg, Manley, Myerson & Casey</u>, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("to allow one creditor to assert two dollars in claims for every one dollar of loss from the same debtor violates principles of ratable distribution and offends notions of uniform treatment for creditors") (quotations omitted).

JLQ filed Claim No. 34 in the Chapter 11 Case and an additional claim, on account of the same debt, in the Japanese Case. JLQ is entitled only to one recovery, if any, on its claim.

## VI. CONCLUSION

**WHEREFORE**, the Trust respectfully requests that this Court enter an order (1) disallowing Claim No. 34 and (2) disallowing the JLQ Japanese Claim; and (3) granting such additional relief as the Court deems necessary and appropriate.

Dated:     Honolulu, Hawaii,          Respectfully submitted,
           December 5, 2008


                                       /s/ Chuck C. Choi
                                       CHUCK C. CHOI
                                       Wagner, Choi & Verbrugge
                                       Attorneys at Law
                                       Counsel to the Azabu Liquidating Trust


                                       /s/ H. Alexander Fisch
                                       JEFFREY C. KRAUSE,
                                       H. ALEXANDER FISCH, AND
                                       LAUREN N. GANS
                                       Stutman, Treister & Glatt
                                       Professional Corporation
                                       Counsel to the Azabu Liquidating Trust

                                       /s/ Wayne K.T. Mau
                                       WAYNE K.T. MAU
                                       Watanabe Ing, LLP
                                       Counsel to the Azabu Liquidating Trust

# EXHIBIT "A"

**JLQ, LLC (Claim No. 34)**

| Sub-claim Nos. | Original Creditor | Chapter 11 Case Proof of Claim Amount (JPY) | Japanese Case Proof of Claim Amount (JPY) | Objections |
|---|---|---|---|---|
| 1 | Mitsubishi Trust & Banking<br><br>(Date loaned: 12/31/91) | 37,114,062,169 | 40,073,724,315 | Time Barred; statute of limitations expired 2/24/1999<br><br>Includes improper postpetition interest in the amount of JPY 2,959,662,146 |
| 2 | Mitsubishi Trust & Banking<br><br>(Date loaned: 12/31/91) | 10,895,829,739 | 11,640,523,274 | Time Barred; statute of limitations expired 11/12/2003<br><br>Includes improper postpetition interest in the amount of JPY 744,693,535 |
| 3 | Toyo Trust & Banking<br>(Date loaned: 11/1/85) | 2,696,655,218 | 2,927,529,995 | Time Barred; statute of limitations expired 9/20/1999<br><br>Includes improper ostpetition interest in the amount of |
| 4 | Toyo Trust & Banking<br><br>(Date Loaned: 5/17/86) | 2,073,781,498 | 2,246,295,756 | Time Barred; statute of limitations expired 9/20/1999<br><br>Includes improper postpetition interest in the amount of JPY 172,514,258 |
| 5 | Toyo Trust & Banking<br><br>(Date loaned: 10/31/86) | 526,399,604 | 570,189,867 | Time Barred; statute of limitations expired 9/20/1999<br><br>Includes improper postpetition interest in the amount of JPY 43,790,263 |

| | | | | |
|---|---|---|---|---|
| 6 | Toyo Trust & Banking<br><br>(Date Loaned: 1/31/87) | 608,067,945 | 658,652,054 | Time Barred; statute of limitations expired  9/20/1999<br><br>Includes improper postpetition interest in the amount of JPY 50,584,109 |
| 7 | Toyo Trust & Banking<br><br>(Date Loaned: 4/28/87) | 2,509,593,584 | 2,718,362,288 | Time Barred; statute of limitations expired 4/30/1997<br><br>Includes improper postpetition interest in the amount of JPY 208,768,704 |
| 8 | Toyo Trust & Banking<br><br>Date Loaned: 11/6/87) | 856,493,635 | 927,743,843 | Time Barred; statute of limitations expired 4/30/1997<br><br>Includes improper postpetition interest in the amount of JPY 71,250,208 |
| 9 | Toyo Trust & Banking<br><br>(Date Loaned: 7/20/88) | 1,551,543,810 | 1,684,379,602 | Time Barred; statute of limitations expired 11/30/1997<br><br>Includes improper postpetition interest in the amount of JPY 132,835,792 |
| 10 | Toyo Trust & Banking<br><br>(Date Loaned: 2/28/89) | 80,931,522 | 87,637,424 | Time Barred; statute of limitations expired 3/31/1997<br><br>Includes improper postpetition interest in the amount of JPY 6,705,902 |
| 11 | Toyo Mortgage Service<br><br>(Date Loaned: 2/9/90) | 698,399,376 | 761,986,191 | Time Barred; statute of limitations expired 6/13/2002<br><br>Includes improper postpetition interest in the amount of JPY 63,586,815 |
| 12 | Toyo Mortgage Service<br><br>(Date Loaned: 2/9/90) | 1,183,721,917 | 1,292,116,437 | Time Barred; statute of limitations expired 6/13/2002<br><br>Includes improper postpetition interest in the amount of JPY 108,394,520 |

| | | | | |
|---|---|---|---|---|
| 13 | Toyo Mortgage Service<br><br>(Date Loaned: 8/31/90) | 1,151,969,315 | 1,247,115,616 | Time Barred; statute of limitations expired 6/13/2002<br><br>Includes improper postpetition interest in the amount of JPY 95,146,301 |
| 14 | TG Service<br><br>(Date loaned: 12/24/87) | 8,524,240,642 | 9,287,926,494 | Time Barred; statute of limitations expired 6/9/1997<br><br>Includes improper postpetition interest in the amount of JPY 763,685,852 |
| 15 | TG Service<br>(Date loaned: 2/26/88) | 117,044,795 | 117,044,795 | Time Barred; statute of limitations expired 6/9/1997 |
| 16 | TG Service<br>(Date loaned: 2/26/88) | 108,878,879 | 108,878,879 | Time Barred; statute of limitations expired 6/9/1997 |
| 17 | TG Service<br><br>(Date loaned: 4/8/88) | 508,828,009 | 554,663,406 | Time Barred; statute of limitations expired 6/9/1997<br><br>Includes improper postpetition interest in the amount of JPY 45,835,397 |
| 18 | TG Service<br>(Date loaned: 7/15/88) | 410,645,488 | 457,409,981 | Time Barred; statute of limitations expired 6/9/1997<br><br>Includes improper postpetition Interest JPY 46,764,493 |
| 19 | Mitsubishi Trust & Banking<br>(Date Loaned: 4/30/85) | 8,091,141,336 | 8,878,302,344 | Time Barred; statute of limitations expired 4/29/2000<br><br>Includes improper postpetition Interest JPY 787,161,008 |

| | | | | |
|---|---|---|---|---|
| 20 | Mitsubishi Trust & Banking (Date loaned: 10/21/88) | 490,880,896 | 538,637,112 | Time Barred; statute of limitations expired 4/29/2000 <br><br> Includes improper postpetition Interest JPY 47,756,216 |
| 21 | Toyo Mortgage Service (Date loaned: 9/29/89) | 39,313,582 | 40,160,855 | Time Barred; statute of limitations expired 12/20/2001 <br><br> Includes improper postpetition Interest of JPY 847,273 |
| | | 80,238,422,959 | 86,819,280,528 | |

Total Postpetition Late Charges Asserted:  JPY 6,580,857,569

All portions of claim subject to exchange rate and duplicate claim objections.